589 F.2d 851
 5 Bankr.Ct.Dec. 73
 In the Matter of: LOWERY BROTHERS, INC., a Florida
Corporation, Bankrupt.
Edward S. AVDOYAN, Trustee, Appellant,
v.
DAVIS WATER & WASTE INDUSTRIES, INC., a Georgia Corporation, Appellee.
 No. 76-3151.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 15, 1979.
 
 Morton Kosto, Orlando, Fla., for appellant.
 Patrick T. Christiansen, James M. Corrigan, Orlando, Fla., for appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before JONES, RONEY and TJOFLAT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 The controlling issue in this case is whether Florida Statutes section 713.15,[1] a portion of the Florida Mechanics' Lien Law,[2] creates a statutory lien valid against a trustee in bankruptcy under sections 1(29a), 67(b) and 67(c) of the Bankruptcy Act (the Act), 11 U.S.C. §§ 1(29a), 107(b), 107(c) (1976). The bankruptcy judge held that it does not create a statutory lien and voided as a preferential transfer the repossession of certain materials from the bankrupt, Lowery Brothers, Inc. (Lowery), by Davis Water & Waste Industries, Inc. (Davis). On appeal, the district court reversed, holding that Florida Statutes section 713.15 creates a statutory lien valid against a trustee in bankruptcy. We affirm the ruling of the district court.
 
 
 2
 * The relevant facts in this case are not in dispute. Lowery was a contractor retained by ITT Development Corporation (ITT) and Atlantis Development Corporation (Atlantis) to perform certain underground and utility construction on the Palm Coast project in Flagler County, Florida. Lowery commenced work on the Palm Coast project in 1970. It abandoned its work on the project in mid-August 1974 and was formally notified in a letter from ITT and Atlantis dated August 12, 1974, that it should leave the construction site. Prior to its abandonment of the project, Lowery had purchased various supplies and equipment for the construction of water and sewer collection and distribution systems from Davis on open account. While some of these materials had been incorporated into the Palm Coast project prior to Lowery's abandonment, other materials had not yet been so incorporated and were still situated on the jobsite. At the time of its abandonment, Lowery owed Davis approximately $124,000 for materials Davis had furnished to Lowery for the project. In early September 1974, Davis, relying on Florida Statutes section 713.15, repossessed the unincorporated materials; it later issued Lowery a credit for the repossessed materials in the amount of $47,768.09, the original purchase price for those items. On October 30, 1974, Lowery filed its petition for voluntary bankruptcy.
 
 
 3
 On January 10, 1975, Edward S. Avdoyan, the trustee for Lowery (Trustee), brought this action to avoid Davis's repossession of the materials as an improper preference under section 60(b) of the Act, 11 U.S.C. § 96(b) (1976). Davis answered that Florida Statutes section 713.15 created a valid statutory lien which would prevent the Trustee from avoiding Davis's act of repossession. Both parties moved for summary judgment, and on August 18, 1975, the bankruptcy judge granted the Trustee's motion, holding that Florida Statutes section 713.15 does not create a statutory lien under the Act and that Davis's repossession of materials from the Palm Coast jobsite constituted a preferential transfer within four months of Lowery's bankruptcy and thus was avoidable by the Trustee. In reversing the bankruptcy judge, the district court read section 713.15 as establishing a statutory lien within the meaning of the Act, held that this lien could not be avoided by the Trustee, and directed the entry of final judgment for Davis. The Trustee appealed the decision of the district court.
 
 
 4
 Although the parties briefed and argued the issue of whether the elements of an avoidable preference are present, we need not decide this point since our finding of a valid statutory lien disposes of this case.
 
 II
 
 5
 The Act provides a special status to the holder of a statutory lien. The holder of such a lien is protected against the avoidance powers of a bankruptcy trustee so long as the tests of sections 67(b), (c)(1)(A) and (c)(1)(B) of the Act are met.[3] Section 67(b) provides that the avoiding power given a trustee by section 60 of the Act, 11 U.S.C. § 96 (1976), is ineffective against a "statutory lien" except under the circumstances set forth in section 67(c). "Statutory lien" is defined by section 1(29a) of the Act, 11 U.S.C. § 1(29a) (1976), as follows:
 
 
 6
 "Statutory lien" shall mean a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute.
 
 
 7
 While the Act defines the term statutory lien, it nowhere defines the term "lien" itself; instead, one must examine the law of the state whose statute is at issue in order to determine whether it establishes a "lien" under state law and thus under the Act. City of New York v. Hall, 139 F.2d 935, 936 (2d Cir. 1944); City of New Orleans v. Harrell, 134 F.2d 399, 400 (5th Cir. 1943); Commercial Credit Co. v. Davidson, 112 F.2d 54, 55 (5th Cir. 1940); City of Dallas v. Ryan (In re Brannon), 62 F.2d 959, 961 (5th Cir. 1933); In re Trahan, 283 F.Supp. 620, 622 (W.D.La.), Aff'd per curiam, 402 F.2d 796 (5th Cir. 1968), Cert. denied sub nom. Bernard v. Beneficial Finance Co., 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969); 4 Collier on Bankruptcy P 67.20 at 219-20, P 67.25 at 347-48, P 67.281(2.1) at 420-21 (14th ed. J. Moore & L. King 1978); See In re Wallace Lincoln-Mercury Co., 469 F.2d 396, 400 (5th Cir. 1972). Therefore, we must examine Florida law and determine whether Florida Statutes section 713.15 creates a lien. If it does, we then must determine whether this lien is a statutory lien as defined by section 1(29a) of the Act. If it is a statutory lien, we finally must decide whether it survives the test of section 67(c)(1) (A) and (B) of the Act.
 
 III
 
 8
 There is no reported case in which a Florida court has decided whether section 713.15 creates a lien.[4] Accordingly, we must anticipate how a Florida court would resolve this question were it confronted by it. In order to do so, we must turn to general tenets of Florida law and to an analysis of section 713.15 and the Florida Mechanics' Lien Law.
 
 
 9
 Florida courts have defined a lien as "a charge upon property for the payment of a debt or duty." Phillips v. Atwell, 76 Fla. 480, 488, 80 So. 180, 182 (1918). "A lien is a qualified right or a proprietary interest, which may be exercised over the property of another. It is a right which the law gives to have a debt satisfied out of a particular thing." City of Sanford v. McClelland, 121 Fla. 253, 257, 163 So. 513, 514 (1935). Section 713.15 gives the seller of materials the right to repossess them from their purchaser upon the completion or abandonment[5] of an improvement[6] without or prior to the incorporation of the materials therein if the seller has not received payment for the materials. Although it is unclear from the language of the statute exactly when this right of repossession comes into existence, that is, whether it is a conditional right to repossess the materials which arises at the time of original delivery or whether it only commences upon the act of completion or abandonment of the improvement, the right definitely exists after the time of abandonment or completion. Section 713.15 clearly creates a "charge upon property for the payment of a debt" since it gives the supplier a right to repossess the materials it delivered for an improvement if the debt for the materials has not been satisfied, provides that title to the materials is revested in the supplier "as if (the supplier) had never parted with their possession," and states that after repossession or replevin the underlying debt for the materials is extinguished. Similarly, the provision creates a right which a supplier such as Davis may exercise over the property of another[7] in order to satisfy his debt out of a particular thing, that being the unused materials still present on the improvement site. Thus, section 713.15 appears to fit the general characteristics of a lien as defined by the Florida courts.
 
 
 10
 As mentioned above, section 713.15 is a portion of the Florida "Mechanics' Lien Law," which is Part I of Chapter 713 of the Florida Statutes, entitled "Liens, Generally." Thus, section 713.15 is categorized by the Florida Legislature under both "Liens" and "Mechanics' Liens." The title of the law which enacted the original version of section 713.15 was:
 
 
 11
 AN ACT Providing for Mechanics' or Laborers' Liens Including Liens for Materials on Real Property, Providing Penalties for Misapplication of Funds and for Furnishing False Statements, to Make Uniform the Laws of this State with Other States with Reference Thereto, and to Repeal all Acts or Parts of Acts Inconsistent Herewith.
 
 
 12
 1935 Fla.Laws ch. 17097. In 1963 the original version of section 713.15 was revised as part of a law entitled: "AN ACT relating to mechanics' lien law; revising chapter 84, repealing sections 84.01-84.35 and adding sections 84.011-84.371, all Florida Statutes; providing effective date October 1, 1963." 1963 Fla.Laws ch. 63-135.
 
 
 13
 The Florida Constitution provides that "(e)very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Fla.Const. art. III, § 6. Thus, the title of an act defines its scope, Finn v. Finn, 312 So.2d 726, 730 (Fla.1975); Hillsborough County v. Price, 149 So.2d 912, 914 (Fla.Dist.Ct.App.1963), and the body of an act can contain no valid provision beyond the range of the subject set forth by the title of the act. State v. Tindell, 88 So.2d 123, 124 (Fla.1956) (en banc). The purpose of this constitutional mandate is to make certain that both the state legislature and the public are given adequate notice as to what a law entails. State v. McDonald, 357 So.2d 405, 407 (Fla.1978). It is clearly relevant that section 713.15 is contained in a chapter entitled "Liens, Generally," a part entitled "Mechanics' Lien Law," and was enacted in a law referring to "Mechanics' or Laborers' Liens Including Liens for Materials on Real Property." The subject of this law is mechanics' liens, as stated in its title. By constitutional provision only one subject may be included in this law. We consider the fact that the Florida Legislature chose to place section 713.15 in the mechanics' lien statute as an indication that the legislature felt that section 713.15 creates a lien under Florida law.
 
 
 14
 The history of section 713.15 and the Florida Mechanics' Lien Law gives a further indication that section 713.15 does create a mechanics' lien, or at least some form of lien. The 1885 Florida Constitution provided that: "The Legislature shall provide for giving to mechanics and laborers an adequate lien on the subject matter of their labor." Fla.Const. art. XVI, § 22 (1885). As a result, the legislature enacted Florida's original mechanics' lien law. 1887 Fla.Laws ch. 3747. In 1935 Florida was the only jurisdiction to adopt the Uniform Mechanics' Lien Act.[8] 1935 Fla.Laws ch. 17097. Section 10 of that chapter provided:
 
 
 15
 Repossession of materials not used. If for any reason the completion of an improvement is abandoned, or though the improvement is completed, materials delivered are not used therefor, a person who has delivered materials for the improvement which have not been incorporated therein and for which he has not received payment may repossess and remove such materials; and thereupon he shall have no lien on the real property or improvements and no right under section 25-1 against persons secondarially (Sic ) liable, for the price thereof, but shall have the same rights in regard to the materials as if he had never parted with the possession. This right to repossess and remove the materials shall not be effected (Sic ) by their sale, encumbrance, attachment, or transfer from the site of the improvement, except that, if the materials have been so transferred, the right to repossess them shall not be effective as against a purchaser or encumbrancer thereof in good faith whose interest therein shall have arisen since such transfer from the site of the improvement, or as against a creditor attaching after such transfer. The right of repossession and removal given by this section shall extend only to materials whose purchase price does not exceed the amount remaining due to the person repossessing; but where materials have been partly paid for, the person delivering them may repossess them as allowed in this section on refunding the part of the purchase price which has been paid.[9]
 
 
 16
 This predecessor to section 713.15 was the law until 1963, when it was repealed, 1963 Fla.Laws ch. 63-135, and replaced by the present language.[10] Thus, with a slight variation in language, section 713.15 has been part of the scheme of the Florida Mechanics' Lien Law since 1935.
 
 
 17
 In the ordinary materialman[11] situation the materialman furnishes materials to a contractor, who incorporates them into an improvement which is in progress. If the materialman is not paid for his materials, his recourse is his statutory lien on the improvement and the realty to which it is attached. Fla.Stat. §§ 713.05-.06 (1977). Section 713.15 covers the situation when an improvement is either completed or abandoned before the materials are incorporated therein. There is no reason for the materialman to need a section 713.05 or .06 lien on realty when his materials have not been incorporated; instead, he can simply go to the jobsite and peacefully repossess them. As stated by the committee which prepared the original version of section 713.15 in the Uniform Mechanics' Lien Act, "(t)his is equitable, since it saves the materialman from loss and leaves the owner in no worse position than before the delivery." Standard State Mechanics' Lien Act Committee, Supra note 8, at 67 n.92. If the materialman so chooses, under section 713.15 he may bring an action for replevin of the materials in lieu of making a peaceful repossession.[12] Section 713.15 is an integral part of the Florida Mechanics' Lien Law structure when materials have been incorporated into an improvement the materialman may use sections 713.05-.06 as his remedy, while if the materials are not yet so incorporated and the project is completed or abandoned the materialman may exercise one of the alternative remedies given him by section 713.15.
 
 
 18
 We note the observation of one commentator, who has stated that "(w)here materials are not furnished in accordance with the Mechanics' Lien Law, they are not covered by the provisions of § 713.15." 2 S. Rakusin, Supra, § 24.03(A)(2), at 3b (1978) (footnote omitted). Were section 713.15 not deemed to create a form of lien by the Florida Legislature, it is highly unlikely that its application would depend upon compliance with the Mechanics' Lien Law. We further observe that section 713.15 gives the furnisher of materials still located on an improvement site:
 
 
 19
 a superior right to any other claim to the materials. The claimant's right to repossess or replevy the materials is not affected by their sale, encumbrance, or attachment according to the statute. The section may be considered a legislative pronouncement that there simply cannot be a subsequent good faith purchaser, or encumbrancer, without notice of the true ownership of Materials stored at a construction jobsite. Likewise, § 713.17 ([13] prohibits a person other than the seller of the materials from subjecting the materials to attachment, execution or any other legal process to enforce any debt due, during the time in which the materials are about to be applied to the improvement.
 
 
 20
 2 S. Rakusin, Supra, § 24.03(D)(1) (emphasis in original).[14] In County National Bank v. Fierman, 188 So.2d 384 (Fla.Dist.Ct.App.1966), the court held that because of the predecessor of section 713.17 the judgment creditor of a subcontractor could not levy against materials furnished a subcontractor and intended for use in an improvement. Thus, in the case before us no creditor of Lowery could have levied on the materials furnished it by Davis prior to Lowery's abandonment of work (after abandonment the materials were not "about to be applied to improve the real property" as required by section 713.17), and after abandonment Davis could and did repossess the materials and have title revert to it "as if (Davis) had never parted with their possession." A supplier has to take no action to preserve its right, such as a filing under a provision of the Mechanics Lien Law, replevin statute, or Uniform Commercial Code, National Steel Products Co. v. Donald L. Myrick & Associates, Inc., 353 So.2d 657, 659 (Fla.Dist.Ct.App.1977); 2 S. Rakusin, Supra, § 24.03(A); it merely has to go to a jobsite and peaceably repossess its materials (unless it chooses to replevy them). The priority status section 713.15 confers upon a supplier clearly appears to be that sort of special right generally referred to as a lien.
 
 
 21
 We observe that section 713.15 provides that after a supplier reclaims or replevies unincorporated materials "he shall have no lien on the real property or improvements and no right against any persons for the price thereof, but shall have the same rights in regard to the materials as if he had never parted with their possession." Thus, by employing this provision he precludes himself from any other relief. In light of Associated Housing Corp. v. Keller Building Products of Jacksonville, Inc., 335 So.2d 362 (Fla.Dist.Ct.App.1976), in which the court upheld as a potentially valid affirmative defense the plaintiff's alleged failure to mitigate damages because of a failure to repossess or replevy under section 713.15, it appears that if a supplier fails to utilize the remedy provided him by section 713.15 he may be at least partially foreclosed from further relief because of a breach of his duty to mitigate damages. We feel that the Florida Legislature would be unlikely to preclude an important remedy, such as an action for debt, unless it provided what it viewed as a substitute right of equal or greater value. In fact, section 713.15 provides a remedy which is in some respects superior to a lien on realty or an action for debt, as such a lien or action may or may not be fully satisfied, while section 713.15 restores Ownership of the unincorporated materials to their supplier.[15] In addition, various procedural steps must be followed before recovery may be had by way of a lien on realty or other action, while section 713.15 requires the mere act of repossession. The return of title to the supplier is clearly a significant aspect of section 713.15, and we believe this characteristic further indicates lien status.
 
 
 22
 Our analysis of section 713.15 and our holding that it creates a lien is supported by the fact that an analogous statutory provision has been held to constitute a lien under the laws of Louisiana. In In re Trahan, 283 F.Supp. 620 (W.D.La.), Aff'd per curiam, 402 F.2d 796 (5th Cir. 1968), Cert. denied sub nom. Bernard v. Beneficial Finance Co., 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969), the court had to determine whether the "vendor's privilege" granted the seller of merchandise by Louisiana law[16] creates a lien for the seller that is valid against a trustee in bankruptcy. In Trahan, at the time of bankruptcy the bankrupt possessed certain furniture which he had purchased on credit, for which he had not paid in full, and over which a vendor's privilege had been reserved. The district court, in reversing the decision of the bankruptcy referee, construed the vendor's privilege and held that it establishes a lien under state law. The court went on to hold that Louisiana article 3227 creates a statutory lien under the Act and that it is valid against the claims of a trustee in bankruptcy. While the court was construing a civil law statute, whereas the Florida provision before us operates in a common law system, we feel that the Trahan court's holding is relevant to our decision. Louisiana article 3227 provides By statute a form of secured status to the seller of personalty such that when he is not paid for his property he has a preferred status over other creditors so long as the purchaser retains possession of the property. Florida's section 713.15 provides a superior status to the supplier of materials to a construction site such that if the materials are not incorporated into a completed or abandoned project their supplier may recover them and have a superior status over all other creditors so long as the materials remain on the improvement site. It "permits one who furnishes materials to recover them without running the risk of their being attached by someone else." Handbook of National Conference of Commissioners on Uniform State Laws 525 (1932). The Florida provision grants rights superior even to those of the Louisiana one, since the Louisiana law gives a vendor a "preference on the price of his property" while the Florida act returns possession and title of goods to their original supplier, and since the Florida statute generally grants superior status to a supplier even after materials are transferred by their original purchaser.[17] Like Louisiana's article 3227, section 713.15 creates by statute a superior status for the supplier of movable property which should be considered a lien under state law.[18]
 
 
 23
 We have considered the arguments of the Trustee and the decision of the bankruptcy judge, both of whom maintain that section 713.15 does not create a lien under Florida law. Both point to the fact that the language of section 713.15 does not denominate the remedy it provides the supplier of materials as a lien, and consequently argue that since the word lien is not used section 713.15 must not create a lien under Florida law. While it is true that the provision does not use the word lien in its general description of the alternative remedies it provides, this fact is not dispositive. As we have discussed, section 713.15 creates a right which fits the definition which Florida courts have given for the term lien. It has been an integral portion of the Florida Mechanics' Lien Law since 1935, and grants alternative remedies which are closely tied to that which is clearly denominated as a lien in the Florida Mechanics' Lien Law. It is clearly analogous to a Louisiana statute which has been held to constitute a lien. The right established by section 713.15 cannot be excluded from the status of a lien merely because it fails to refer to the remedies it provides as liens. Cf. In re Trahan, 283 F.Supp. 620, 623 (W.D.La.), Aff'd per curiam, 402 F.2d 796 (5th Cir. 1968), Cert. denied sub nom. Bernard v. Beneficial Finance Co., 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969).
 
 
 24
 The Trustee also argues that section 713.15 does not create a lien because of definitions contained in the Florida Mechanics' Lien Law. The Trustee notes that the Florida Mechanics' Lien Law defines the term "lienor" as "any person having a lien or prospective lien upon Real property by virtue of this chapter and includes his successor in interest." Fla.Stat. § 713.01(10) (1977) (emphasis added).[19] The Trustee further observes that Florida Statutes section 713.02 sets forth various types of lienors, and that all liens to which it refers are upon real property and not personalty. Based on this fact he argues that all liens arising under the Florida Mechanics' Lien Law are on realty, and since section 713.15 creates no rights over realty, but rather covers materials, it must not create a lien. While this argument has a certain logical appeal, it does not persuade us. While section 713.15 may not create an ordinary mechanics' lien under chapter 713, part I because it does not create a lien on real property,[20] it still creates a lien-like right which we consider a lien. Section 713.15 may create a form of hybrid mechanics' lien, since it covers a mechanics' lien situation where a lien over realty is unnecessary but equity requires a superior, lien-type status for the supplier.[21] In any event, we are convinced that the right created by section 713.15 is a lien despite the fact that it is not over realty and thus unlike the normal chapter 713, part I lien.
 
 
 25
 Based upon the analysis we have set forth, we hold that section 713.15 creates a lien under Florida law, and feel that a Florida court would so rule if this issue were properly brought before it.
 
 IV
 
 26
 Having decided that section 713.15 does create a lien under Florida law, we must next determine the federal law issue of whether it meets the Act's section 1(29a) definition of a statutory lien. The lien created by section 713.15 exists only by virtue of statute; section 713.15 does not merely codify a consensual agreement for the giving of security or otherwise between the supplier and purchaser of construction materials. The lien arises upon the specified circumstances and conditions that a supplier has furnished materials for an improvement, has not been paid for these materials, and the improvement has been completed or abandoned prior to the incorporation of the materials therein. The lien is not a judicial lien since no judicial proceeding is necessary for its existence; the lien exists because of the abandonment or completion of an improvement project, and can be enforced without the invocation of any judicial process (so long as the supplier chooses to employ peaceful repossession, rather than replevin, as his remedy).[22] We conclude that section 713.15 meets the definitional requirements of section 1(29a), and is thus a statutory lien for the purposes of the Act.[23]
 
 V
 
 27
 As noted above, section 67(b) of the Act provides that statutory liens are valid against a trustee in bankruptcy despite the avoidance power provisions of section 60 of the Act so long as the rules of section 67(c) of the Act are not violated. As we have now decided that Davis held a valid statutory lien over the materials it repossessed, the district court correctly reversed the bankruptcy judge and granted Davis's motion for summary judgment unless section 713.15 falls afoul of the statutory lien avoidance tests of section 67(c). In this case, only the provisions of section 67(c)(1)(A) and (B) have any possible application to the lien created by section 713.15.[24] As we shall now demonstrate, section 713.15 successfully weathers the storms of sections 67(c) (1)(A) and (B), and the district court was correct in its decision.
 
 
 28
 A. Florida Statutes Section 713.15 and Section 67(c)(1)(A):
 
 
 29
 The lien created by section 713.15 is triggered by the completion or abandonment of an improvement prior to the incorporation of unpaid-for materials therein. This act of abandonment or completion is unrelated to the factors set forth in section 67(c)(1)(A), those being the time of the debtor's insolvency,[25] the distribution or liquidation of the debtor's property, or the execution upon the debtor's property by one other than the section 713.15 lienor. While there might be some correlation between a debtor's insolvency and his abandonment of an improvement, it is clearly not a direct one, and, of course, a perfectly solvent debtor could complete work on a project prior to the use of materials provided by a particular supplier, thereby giving the supplier the right to repossess or replevy the materials through his section 713.15 statutory lien. Accordingly, we find that section 713.15 satisfies the requirements of section 67(c)(1)(A) of the Act. See generally 4 Collier on Bankruptcy, supra P 67.281(2.1).
 
 
 30
 B. Florida Statutes Section 713.15 and Section 67(c)(1)(B):
 
 
 31
 Section 67(c)(1)(B) provides a somewhat more complex test for the validity of a statutory lien, the bona fide purchaser standard. As noted above, section 713.15 gives a provider of materials an indefeasible right to exercise his statutory lien so long as the materials remain on the improvement site. It provides that the "right to repossess and remove or replevy the materials shall not be affected by their sale, encumbrance, attachment or transfer from the site of improvement."[26] Since section 713.15 creates a lien which cannot be overridden by a subsequent bona fide purchaser so long as the materials remain on the improvement site, in this case it meets the requirement of section 67(c)(1)(B). At any event, in the case before us the facts disclose that Davis's lien was choate and completely exercised more than one month prior to Lowery's date of bankruptcy,[27] since Davis repossessed the disputed materials in early September 1974 while Lowery filed its petition for voluntary bankruptcy on October 30, 1974. Under the terms of section 713.15, as we construe it, Davis's lien (its right to repossess or replevy the materials) arose No later than the date of Lowery's abandonment of the Palm Coast project in early August 1974. As we have already observed, Davis was not required by section 713.15 to make any filings or otherwise act to perfect its lien, and in early September it exercised its rights under section 713.15 by peaceably repossessing the materials abandoned by Lowery and crediting Lowery's account for the amount of the purchase price. Upon its repossession section 713.15 provides that Davis regained its title to the materials "as if (Davis) had never parted with . . . possession (of the materials)." On the date of Lowery's bankruptcy it thus had no claim of title to the materials, and could convey nothing to a bona fide purchaser. Since this was the situation, clearly Davis's lien was perfected and enforceable against one obtaining the rights of a bona fide purchaser at the date of bankruptcy, and thus was valid under section 67(c)(1)(B) of the Act.
 
 VI
 
 32
 We have examined Florida Statutes section 713.15 and determined that it creates a valid statutory lien which meets the standards of section 67(b) of the Bankruptcy Act. Accordingly, the district court correctly remanded the case for the granting of summary judgment for Davis and the entry of final judgment on its behalf.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 Fla.Stat. § 713.15 (1977) provides:
 Repossession of materials not used. If for any reason the completion of an improvement is abandoned or though the improvement is completed, materials delivered are not used therefor, a person who has delivered materials for the improvement which have not been incorporated therein and for which he has not received payment may peaceably repossess and remove such materials or replevy the same and thereupon he shall have no lien on the real property or improvements and no right against any persons for the price thereof, but shall have the same rights in regard to the materials as if he had never parted with their possession. This right to repossess and remove or replevy the materials shall not be affected by their sale, encumbrance, attachment, or transfer from the site of improvement, except that if the materials have been so transferred, the right to repossess or replevy them shall not be effective as against a purchaser or encumbrancer thereof in good faith whose interest therein is acquired after such transfer from the site of the improvement or as against a creditor attaching after such transfer. The right of repossession and removal given by this section shall extend only to materials whose purchase price does not exceed the amount remaining due to the person repossessing but where materials have been partly paid for, the person delivering them may repossess them as allowed in this section on refunding the part of the purchase price which has been paid.
 
 
 [2]
 The Florida Mechanics' Lien Law is contained in Part I of chapter 713 of the Florida Statutes, Fla.Stat. §§ 713.01-.36 (1977)
 
 
 [3]
 This section provides:
 (b) The provisions of section 96 of this title to the contrary notwithstanding and except as otherwise provided in subdivision (c) of this section, statutory liens in favor of employees, contractors, mechanics, or any other class of persons, and statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him.
 (c)(1) The following liens shall be invalid against the trustee:
 (A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor;
 (B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: And provided further, That if applicable lien law requires a lien valid against the trustee under section 110(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court . . . .
 11 U.S.C. § 107(b), (c)(1)(A), (c)(1)(B) (1976) (emphasis in original).
 
 
 [4]
 In fact, section 713.15 has been mentioned by the Florida courts on only two reported occasions, once in National Steel Prod. Co. v. Donald L. Myrick & Assoc., Inc., 353 So.2d 657 (Fla.Dist.Ct.App.1977) and once in Associated Hous. Corp. v. Keller Building Prod. Inc., 335 So.2d 362 (Fla.Dist.Ct.App.1976)
 
 
 [5]
 As one commentator has observed, it is unclear whether the requisite abandonment is that of the contractor or the owner of an improvement project. 2 S. Rakusin, Florida Mechanics' Lien Manual § 24.03(B) (1978). However, it would appear that the relevant abandonment would be that of the party with whom the materialman had contracted for payment, since he is the party indebted to the materialman. Thus, in this case Lowery's abandonment of the Palm Coast project would trigger section 713.15
 
 
 [6]
 An improvement is defined in Florida Statutes section 713.01(8) (1977) as "any building, structure, construction, demolition, excavation, landscaping, or any part thereof existing, built, erected, placed, made or done on land or other real property for its permanent benefit." Lowery's activities at the Palm Coast project clearly constituted the making of an improvement
 
 
 [7]
 In this case, pursuant to the terms of Florida Statutes section 672.401 (1977), title to the materials in question passed from Davis to Lowery upon Davis's delivery of the materials to Lowery. Thus, at the time of Davis's act of repossession the materials were the property of Lowery
 
 
 [8]
 The Uniform Mechanics' Lien Act was promulgated by the Standard State Mechanics' Lien Act Committee of the United States Department of Commerce with the cooperation of the National Conference of Commissioners on Uniform State Laws and was approved by the American Bar Association in 1932. Standard State Mechanics' Lien Act Comm., U.S. Dep't of Commerce, Uniform Mechanics' Lien Act 1 (1932). For a discussion of the preparation of the Uniform Act, see Id. at 17-19; Imlay, Problems in Uniform Mechanics' Lien Act, 19 A.B.A.J. 116 (1933). The Uniform Act was withdrawn in 1943 after Florida was the only state to adopt it. 4 American Law of Property § 16.106F (A.J. Casner ed. 1952); Note, Lien Rights and Construction Lending: Responsibilities and Liabilities in Florida, 29 U.Fla.L.Rev. 411, 413-14 (1977)
 
 
 [9]
 This provision is substantially identical to section 11 of the Uniform Mechanics' Lien Act. Standard State Mechanics' Lien Act Comm., Supra note 8, at 66-67
 
 
 [10]
 The 1963 statute was codified as section 84.151, which was renumbered in 1967 as Florida Statutes section 713.15. 1967 Fla.Laws ch. 67-254, § 35
 
 
 [11]
 Florida Statutes section 713.01(11) (1977) provides that:
 "Materialman" means any person who furnishes materials under contract to the owner, contractor or subcontractor on the site of the improvement or for direct delivery to the site of the improvement or for specially fabricated materials off the site of the improvement for the particular improvement, and who performs no labor in the installation thereof.
 Effective July 1, 1978 the definition of "materialman" was altered to include subsubcontractors as well. 1977 Fla.Laws ch. 77-353, § 1. Davis clearly fits this definition.
 
 
 [12]
 National Steel Prod. Co. v. Donald L. Myrick & Assoc., Inc., 353 So.2d 657 (Fla.Dist.Ct.App.1977), holds that peaceful repossession and replevin are alternative remedies, that is, that a materialman may choose between two distinct remedies, self-help and judicial action. Id. at 659. Presumably materialmen will generally choose the self-help remedy and resort to replevin only when they are unable to repossess peacefully unpaid-for materials
 
 
 [13]
 Fla.Stat. § 713.17 (1977):
 Materials not attachable for debts of purchaser. Whenever materials have been furnished to improve real property and payment therefor has not been made or waived, such materials shall not be subject to attachment, execution, or other legal process to enforce any debt due by the purchaser of such materials, except a debt due for the purchase price thereof, so long as in good faith the same are about to be applied to improve the real property; but if the owner has made payment for materials furnished and the materialman has not received payment therefor, such materials shall not be subject to attachment, execution, or other legal process to enforce the debt due for the purchase price.
 
 
 [14]
 Section 713.15 provides that the right of repossession or replevin given a supplier such as Davis:
 shall not be affected by their (the materials') sale, encumbrance, attachment, or transfer from the site of improvement, except that if the materials have been so transferred, the right to repossess or replevy them shall not be effective as against a purchaser or encumbrancer thereof in good faith whose interest therein is acquired after such transfer from the site of the improvement or as against a creditor attaching after such transfer.
 We note that the situation in this case would be more complicated if Lowery had transferred the unincorporated materials from the Palm Coast jobsite, as then an interviewing bona fide purchaser, encumbrancer, or creditor might have established rights in the materials which would have taken precedence over Davis's section 713.15 right to repossession or replevin. See 2 S. Rakusin, Supra, § 24.03(D)(2). In the present action, since no such transfer occurred the combined effects of sections 713.15 and .17 gave Davis an indefeasible right to the unpaid-for unincorporated materials.
 
 
 [15]
 While section 713.15 does not clearly so state, it would appear that a supplier cannot recover for any deficiency between the original value of the materials he supplied and their value at the time of repossession. Since frequently the value of materials will decline over time (particularly after they are exposed to the elements for a period of time), and since a supplier may not recover for any deficiency in value, he may often incur a loss through the use of section 713.15. This loss presumably would be measured by the difference between the purchase price for the goods at the time of their delivery to the jobsite and the price at which they might be resold after repossession. Still, the statute provides a supplier with a direct return of the items he originally delivered to the improvement location, and thus is preferable to a general lien over the project. Just as a supplier bears the risk of loss, he may also earn the fruits of gain if the value of the materials should increase while they are kept on the jobsite (such gain is not a totally unreasonable prospect, since the value of some rare or valuable materials might increase over time despite their exposure to the elements and their arguable status as "used" merchandise). We express no opinion at this time as to whether a trustee in bankruptcy could somehow recover any appreciation in the value of the unincorporated materials over their original purchase price. Such a result, however, would seem consistent with the general philosophy underlying the Act
 
 
 [16]
 The vendor's privilege is created by La.Civ.Code Ann. art. 3227 (West 1952), which provides in pertinent part as follows:
 He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser.
 
 
 [17]
 As we have already mentioned, under section 713.15 a supplier may repossess or replevy materials even after their transfer by an original purchaser so long as their new acquirer obtained them while they were still situated on the construction site. This provision is based on the theory that when someone acquires materials from an improvement site he should be cognizant of the potential rights of their original supplier and take subject to those rights. 2 S. Rakusin, Supra, § 24.03(D)(1). A supplier may have superior rights over a new acquirer who obtained the materials After their transfer from a jobsite if the new acquirer fails to meet the standards set by section 713.15
 
 
 [18]
 Cf. the cases construing U.C.C. § 2-702(2) (1972 version), which provides:
 Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
 Cases which have invalidated reclamations made under this provision when bankruptcy has ensued have done so by holding that section 2-702(2) creates a statutory lien, and thus a lien which is void because of section 67(c)(1)(A) of the Act, E.g., In re Good Deal Supermarkets Inc., 384 F.Supp. 887 (D.N.J.1974); other cases have validated reclamations made pursuant to section 2-702(2) and in the process apparently held that the provision does not constitute a lien under state law. E. g., In re Federal's Inc., 553 F.2d 509 (6th Cir. 1977); Alfred M. Lewis, Inc. v. Holzman (In re Telemart Enterprises, Inc.), 524 F.2d 761 (9th Cir. 1975), Cert. denied, 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). See generally Note, In Search for Equity: The Seller's U.C.C. § 2-702 Right of Reclamation in Intervening Bankruptcy, 9 U.Tol.L.Rev. 570 (1978). Similar issues of interpretation can arise concerning U.C.C. sections 2-502 and 9-306(4). 4 Collier on Bankruptcy, supra, P 67.281(2.1), at 420-21.
 
 
 [19]
 Effective July 1, 1978 section 713.01(10) was amended to read:
 (10) "Lienor" means:
 (a) A contractor,
 (b) A subcontractor,
 (c) A subsubcontractor,
 (d) A laborer,
 (e) A materialman who contracts with the owner, a contractor, a subcontractor, or a subsubcontractor, or
 (f) A professional lienor under s. 713.03, as each is defined herein, and who has a lien or prospective lien upon real property under part I of this chapter, and includes his successor in interest. No person shall have a lien under part I of this chapter, except those specified in this subsection as they are defined in this section.
 1977 Fla.Laws ch. 77-353, § 1. We note with interest the latter portion of this altered provision. Davis clearly met the definition of materialman, see note 11, Supra, and had a prospective lien upon the real property at the improvement site up until the time Lowery abandoned work without having incorporated the subsequently repossessed materials therein. Thus, Davis could have had a lien under Part I (the Mechanics' Lien Law) up until that time, and may fit the revised definition of lienor. Of course, this new definition does not alter the rights of the parties in this case since it took effect long after the actions which gave rise to this litigation in 1975, but we note its existence since it tends to rebut the Trustee's lienor argument.
 
 
 [20]
 We do not decide whether the only mechanics' lien possible under Florida law is one on real property, but rather leave that question for the determination of the Florida courts when an appropriate occasion for such a decision arises
 
 
 [21]
 See Standard State Mechanics' Lien Act Comm., Supra note 8, at 67 n.92
 
 
 [22]
 The mere fact that in order to enforce its lien a supplier May be required to resort to the courts through an action for replevin does not make a section 713.15 lien a Judicial lien. Cf. 4 Collier on Bankruptcy, supra, P 67.22, at 265-66 (judicial proceedings test of section 67(a) of Act)
 
 
 [23]
 For discussion of the definitional requirements of section 1(29a), see 1 Collier on Bankruptcy P 1.29a, at 130.26-28(1) (14th ed. J. Moore & L. King 1974)
 
 
 [24]
 Section 67(c)(1)(C) deals with statutory rent liens, section 67(c)(2) with liens invalidated by section 67(c)(1), section 67(c)(3) with certain tax liens, section 67(c)(4) with certain penalty-securing liens, and section 67(c) (5) with liens to which section 67(c) does not apply. 11 U.S.C. § 107(c)(1)(C)-(c)(5) (1976). Florida's section 713.15 clearly is affected by none of these remaining provisions of section 67(c)
 
 
 [25]
 Insolvency under section 67(c)(1)(A) is that state defined in section 1(19) of the Act, 11 U.S.C. § 1(19) (1976), which states:
 A person shall be deemed insolvent within the provisions of this (Act) whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts . . . .
 See 4 Collier on Bankruptcy, supra P 67.281(2.1), at 419-20.
 
 
 [26]
 As we have mentioned, See note 14 Supra, section 713.15 provides that if materials are transferred from the improvement site a supplier may lose his priority status as against certain good faith purchasers, encumbrancers or creditors. Under such circumstances the bona fide purchaser rule of section 67(c)(1)(B) might create a problem, since bankruptcy might precede a section 713.15 lien creditor's reclamation of materials and after transfer from the site a bona fide purchaser at the date of bankruptcy might be able to defeat a section 713.15 lien creditor's claim. However, in the present case the materials were not moved from the improvement site until their repossession by Davis and thus the good faith purchaser exception to section 713.15 is inapplicable here. Consequently, section 67(c)(1)(B) does not raise a bar to Davis's statutory lien. Cf. In re Trahan, 283 F.Supp. 620, 626-27 (W.D.La.), Aff'd per curiam, 402 F.2d 796 (5th Cir. 1968), Cert. denied sub nom. Bernard v. Beneficial Finance Co., 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969)
 
 
 [27]
 Section 1(13) of the Act provides that " 'Date of bankruptcy', 'time of bankruptcy', 'commencement of proceedings', or 'bankruptcy', with reference to time, shall mean the date when the petition was filed." 11 U.S.C. § 1(13) (1976). Section 1(24) states that: " 'Petition' shall mean a document filed in a court of bankruptcy or with a clerk thereof initiating a proceeding under this (Act)." 11 U.S.C. § 1(24) (1976). As we have stated, Lowery filed its petition for voluntary bankruptcy on October 30, 1974, so that was the date of bankruptcy for the purposes of section 67(c)(1)(B)