[No. B010148. Second Dist., Div. One. May 5, 1986.]

INDUSTRIAL ASPHALT, INC., Plaintiff and Appellant, v.
GARRETT CORPORATION, AIR RESEARCH AVIATION DIVISION,
Defendant and Respondent.

## COUNSEL

Wagner, Sisneros & Wagner and John J. Wagner for Plaintiff and Appellant.

Munns, Kofford, Hoffman, Hunt & Throckmorton and Gordon Hunt as Amici Curiae on behalf of Plaintiff and Appellant.

Smith & Hilbig and Gregory E. Robinson for Defendant and Respondent.

## OPINION

**LUCAS, Acting P. J.—**

### INTRODUCTION

On January 11, 1984, plaintiff Industrial Asphalt, Inc., filed a complaint to foreclose a lien against defendant Garrett Corporation, Air Research Aviation Division. The complaint alleged that the plaintiff had furnished labor, services, equipment and materials to improve property leased by the defendant, which defendant had not paid for. Plaintiff filed and recorded a claim of lien on defendant's property to secure the debt, and its complaint sought foreclosure and related relief.

The defendant denied the allegations, denied that plaintiff had served the required preliminary notice, admitted the recording of the lien, and interposed five affirmative defenses.

Pursuant to facts stipulated by both plaintiff and defendant, a trial on the complaint was held on October 17, 1984. The trial court found for the defendant, and entered judgment on December 4, 1984. Plaintiff filed a timely notice of appeal. Amicus curiae has filed a brief in support of

plaintiff's appeal. This opinion will refer to the appellant as "plaintiff," and to the respondent as "defendant."

### STANDARD OF REVIEW

 The parties submitted a complaint and response, a stipulation as to the facts, and trial briefs with their contentions of law. Since this case presented no factual dispute, the trial court made a ruling of law, over which the appellate court exercises an independent power of review.

### FACTS

Garrett Corporation leased real property at the Los Angeles International Airport, and contracted with Ken H. Jones & Co. (Ken Jones) to improve some parking lots on the land by applying asphaltic paving. Ken Jones, the original contractor, subcontracted with plaintiff Industrial Asphalt, the subcontractor, for equipment and materials used in the improvement work. Industrial Asphalt furnished this material and equipment between May 19 and August 26, 1983.

Thus, Ken Jones contracted with Garrett Corporation, which paid Ken Jones for work. Industrial Asphalt was under contract to Ken Jones, and *not* to Garrett Corporation, and did not receive any payment from Garrett Corporation.

Neither, however, did Industrial Asphalt receive any payment from Ken Jones, which filed bankruptcy. On May 27, 1983, Industrial served the Civil Code section 3097, 20-day preliminary notice on Garrett Corporation by first class certified mail. Industrial Asphalt did not give preliminary notice to Ken Jones, any reputed contractor, or to the City of Los Angeles.

Industrial Asphalt recorded a mechanic's lien in the Los Angeles County Recorder's Office on October 21, 1983, and later brought this action to foreclose on that lien. The trial court found that Industrial Asphalt as a subcontractor, did not comply with Civil Code section 3097, subdivision (a), because it failed to serve any preliminary notice upon Ken Jones, the original contractor. The court also found that since Industrial Asphalt attempted to foreclose only upon the leasehold interest, it was not required to serve the preliminary notice upon the owner of the property, the City of Los Angeles. The trial court granted judgment in favor of Garrett Corporation, and the judgment was entered on December 4, 1984. This appeal followed.

ISSUE

 This appeal turns on whether the trial court properly denied relief for plaintiff Industrial Asphalt because of its failure to serve a preliminary notice on the original contractor, Ken Jones.

DISCUSSION

Article XIV, section 3 of the California Constitution establishes the Mechanics' Lien remedy, and directs the Legislature to effectuate that remedy by statute: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

The dispute in this case centers on one of the statutes the Legislature has enacted. Civil Code section 3097 requires someone who may later have the right to enforce a lien to first give notice of that potential claim. Civil Code section 3097, subdivision (a) designates who must receive that notice: "Except one under direct contract with the owner or one performing actual labor for wages, or an express trust fund described in Section 3111, every person who furnishes labor, service, equipment, or material for which a lien otherwise can be claimed under this title . . . must, as a necessary prerequisite to the validity of any claim of lien . . . cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section."

In the case at bench, the lien claimant (plaintiff Industrial Asphalt) gave the required notice to the owner (defendant Garrett Corporation, which had contracted with Ken Jones to improve its leased property). However, the lien claimant did *not* serve the required notice on the original contractor (Ken Jones). Garrett Corporation paid Ken Jones for the improvements to its property. Ken Jones, however, declared bankruptcy, and did not pay Industrial Asphalt, its subcontractor. Thus the lien claimant Industrial Asphalt now wishes to perfect its lien against the owner Garrett Corporation and to recover the amount owed by foreclosing against the owner's property.

The owner, Garrett Corporation, however, argues that Industrial Asphalt's failure to serve the required notice upon Ken Jones invalidates the lien, and the trial court found for the defendant on that basis. Industrial Asphalt, on the other hand, urges that its notice to Garrett Corporation constitutes

substantial compliance with the statute, given its purpose to effectuate a constitutionally based remedy for this class of creditor.

To construe the statute strictly would require us to invalidate a lien against an owner who received notice because someone else, the original contractor, did not receive notice. That strict statutory construction would allow a party who received the required notice to be insulated from liability because another party did not receive notice. We do not believe that the statute's purpose should, or does, lead to this aridly formalistic result. We hold that the plaintiff's notice to the defendant satisfied the prerequisites for a valid lien against the defendant, and we reverse the trial court's judgment.

Ancient authority enunciates the purpose of the mechanics' lien: to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier. "The principle upon which liens are allowed in favor of mechanics and material-men is, that their labor and materials have given value to the buildings upon which they have been expended, and that it is inequitable that the owner of land, who has contracted with them for such improvement, or who has stood by and seen the improvement in progress without making objection, should have the benefit of their expenditures without making compensation therefor." (*Avery* v. *Clark* (1891) 87 Cal. 619, 628 [25 P. 919].)

The traditional policy favoring the laborer or material supplier presupposes that their interest differs substantively from that of creditors, whose interest in real property or chattel remains essentially pecuniary. The laborer or material supplier has invested his labor, or added materials originally in his possession, to improve property of another and increase its value. They thus "have, at least in part, created the very property upon which the lien attaches. . . ." (*Tuttle* v. *Montford* (1857) 7 Cal. 358, 360, quoted in *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 825 [132 Cal.Rptr. 477, 553 P.2d 637], app. dismd. *Connolly Development, Inc.* v. *Superior Court of California* (1977) 429 U.S. 1056 [50 L.Ed.2d 773, 97 S.Ct. 778].)

The statutory scheme provides further protections to the various parties. The notice provisions alert owners and lenders to possible claims against property or funds arising from contracts otherwise unknown to them. (*Romak Iron Works* v. *Prudential Ins. Co.* (1980) 104 Cal.App.3d 767, 778 [163 Cal.Rptr. 869].) They also shield the statutory scheme from the charge that it deprives owners of property without due process of law. (*Id.,* at p. 778.)

In interpreting statutes effecting the constitutional lien remedy, the courts have traditionally supported this historic preference for the interests

of laborers and suppliers by applying a rule of liberal construction. (*Roystone Co.* v. *Darling* (1915) 171 Cal. 526 [154 P. 15]; *Hammond Lumber Co.* v. *Barth Investment Corp.* (1927) 202 Cal. 606 [262 P. 31]; *Hendrickson* v. *Bertelson* (1934) 1 Cal.2d 430 [35 P.2d 318]; *Nolte* v. *Smith* (1961) 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996]; *Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d 803; *Brown Co.* v. *Appellate Department* (1983) 148 Cal.App.3d 891 [196 Cal.Rptr. 258]; *Truestone, Inc.* v. *Simi West Industrial Park II* (1985) 163 Cal.App.3d 715 [209 Cal.Rptr. 757].) From *Roystone* to *Truestone,* courts have "uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Truestone, Inc.* v. *Simi West Industrial Park II, supra,* 163 Cal.App.3d 715, 723, quoting *Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d 803, 826-827.)

■ Although Industrial Asphalt in the case at bench did not serve statutory notice upon Ken Jones, it complied with the notice requirement as to defendant Garrett Corporation. That notice, among other functions, affords the property owner the chance to protect his real property interest by requiring a bond, by naming both the original contractor and the subcontractor as payees on checks written to pay for the work, or by requiring other proof that the original contractor has paid the subcontractor. (*Post Bros. Const. Co.* v. *Yoder* (1977) 20 Cal.3d 1, 6 [141 Cal.Rptr. 28, 569 P.2d 133]; *Bentz Plumbing & Heating* v. *Favaloro* (1982) 128 Cal.App.3d 145, 151 [180 Cal.Rptr. 223]; *Patten-Blinn Lumber Co.* v. *Francis* (1958) 166 Cal.App.2d 196, 204 [333 P.2d 255]; *Brown Co.* v. *Appellate Dept., supra,* 148 Cal.App.3d 891, 900; *Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d 803, 808.)

But where the lien claimant has observed the property owner's right to notice, he should be allowed to proceed to perfect his lien. We see no reason, in the absence of prejudice to the property owner (*Wand Corp.* v. *San Gabriel Valley Lbr. Co.* (1965) 236 Cal.App.2d 855, 861 [46 Cal.Rptr. 486]; *Truestone, Inc.* v. *Simi West Industrial Park II, supra,* 163 Cal.App.3d 715, 723), why the subcontractor's failure to serve notice upon an original contractor should render unenforceable a lien against an owner who *did* receive proper notice. To hold otherwise would allow the statute to frustrate enforcement of the constitutional remedy instead of to effectuate it.

The subcontractor ordinarily proceeds out of contractual privity with the owner. The notice provision remedies this anomaly by requiring the subcontractor to serve notice on the owner before later claiming an enforceable lien against the owner's property. The subcontractor and original contractor,

on the other hand, have privity and proceed quite aware of one another; the statutory notice requirement as to the original contractor must rest on some other rationale. In the case at bench, the defendant and plaintiff had no contractual relationship. Nevertheless, the party who *needed* notice in fact received it, while the one who did *not* need notice (because he knew plaintiff's identity, and owned no real property against which plaintiff could file a lien) received none. (*Rich-Lee Equipment Rentals, Inc.* v. *Intermountain Constr. Co.* (1978) 79 Cal.App.3d 581, 588 [145 Cal.Rptr. 106]; purpose of notice requirement is to advise the owner at an early stage of claimants with whom he may have no direct contact and hence no actual notice.) The original contractor also accepted delivery of plaintiff's materials. For all these reasons statutory notice to the original contractor would have been a useless, even futile act which the law does not require.

The California Supreme Court declared that "the recordation of a mechanics' lien . . . inflicts upon the owner only a minimal deprivation of property; that the laborer and materialmen have an interest in the specific property subject to the lien since their work and materials have enhanced the value of that property; and that state policy strongly supports the preservation of laws which give the laborer and materialman security for their claims. In measuring these values, we do not deal in cold abstractions: we take into account the social effect of the liens and the interests of the workers and materialmen that the liens are designed to protect. We measure these valued interests against the loss, if any, caused to the owner. The balance tips in favor of the worker and the materialman. . . ." (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d 803, 827.) This policy declaration guides the result in the case at bench.

*Romak Iron Works* v. *Prudential Ins. Co., supra,* 104 Cal.App.3d 767 does not control, since the issue there involved a subcontractor's failure to give notice to a construction lender whose identity was supposedly unknown to the subcontractor. The opinion states, however, that the subcontractor did not meet its statutory duty to examine alternative sources which would have revealed the lender's identity, and in any case the statutory scheme provides a "failsafe device" which a subcontractor may use to protect his rights in such a situation. (*Id.,* at pp. 775-776.)

In *Romak,* the subcontractor failed to pursue its legal rights, and the construction lender received no notice. Thus the court refused to enforce the subcontractor's stop notice against the construction lender. In the case at bench, however, the defendant Garrett Corporation did receive the preliminary notice, satisfying the *Connolly Development, Inc.* standard. *Romak,* then, does not fit the facts before us.

In *IGA Aluminum Products, Inc.* v. *Manufacturers Bank* (1982) 130 Cal.App.3d 699 [181 Cal.Rptr. 859], the court held notice to a construction lender defective where the subcontractor mailed the preliminary notice by first class mail instead of the certified or registered mail required by statute. Thus, actual notice, and the contractor's "substantially complaint" notice to the lender were not the equivalent of, and did not satisfy, statutory requirements. The court found that when the Legislature amended the statute to its current version, it removed language allowing notice by first class mail. From that finding, it concluded that a rule of liberal construction could not be applied to frustrate the Legislature's "manifested intent" to exact strict compliance with the form of conveyance of the preliminary notice.

Defendant in the case at bench alleges no such manifested legislative intent requiring strict compliance with notice to persons not affected by the lien. Moreover, plaintiff did strictly comply with the statute in sending notice to defendant. *IGA Aluminum Products, Inc.*, it should be pointed out, holds that to perfect a lien, a subcontractor must serve preliminary notice by certified or registered mail. (*Id.*, at p. 706.) *Harold L. James, Inc.* v. *Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1, 6 [204 Cal.Rptr. 494], analyzes and reconciles *Wand Corp., Romak Iron Works*, and *IGA Aluminum Products, Inc.*, stating that "where the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor." But strict notice requirements apply only to parties a lien will affect. In the case at bench, by contrast, defective notice concerned a party *not* affected by the lien, about whom the statute does not specifically manifest a legislative intent as set forth in *IGA Aluminum Products, Inc.* For these reasons, *IGA Aluminum Products, Inc.* does not control the dispute before us.

We find that the notice served upon the defendant in the case at bench conformed to the purposes of the statutory notice requirement and sufficed for the plaintiff to perfect his mechanics' lien. To hold otherwise would come close to defeating the lien because of "meaningless technicalities" (*Truestone, Inc.* v. *Simi West Industrial Park II, supra,* 163 Cal.App.3d 715, 723) where a property owner properly noticed is not prejudiced by lack of notice to some other party.

We agree with *Wand Corp.* v. *San Gabriel Valley Lbr. Co., supra,* 236 Cal.App.2d 855, 861: "Where the purpose of the [relevant statute] is achieved and no one is prejudiced, technical requirements shall not stand in the way of achieving the purpose of the Mechanics Lien Law." Here the defendant received proper notice and has made no showing of any prejudice arising from plaintiff's failure to serve notice on the original contractor.

Neither does it seem just that the innocent party which pursued its legal rights should suffer instead of the innocent party which, though properly placed on notice, took none of the steps to protect its property interest which the law afforded it. (*Sunlight Elec. Supply Co.* v. *McKee* (1964) 226 Cal.App.2d 47, 51 [37 Cal.Rptr. 782].)

DISPOSITION

We reverse the judgment of the trial court.

Devich, J., and Boren, J.,* concurred.

A petition for a rehearing was denied May 29, 1986.

---

*Assigned by the Chairperson of the Judicial Council.