In re **LORETTO WINERY LIMITED,** Debtor (Two Cases).

**Les SASLOW, d/b/a Sun Valley Associates, formerly known as California Ranch Management; Charles Tagliabue; CCRC Farms; Chip Arnett; Chris Miloslavich, Appellants,**

v.

**Paul B. ANDREW, Trustee, Appellee.**

**VALLEY FARM MANAGEMENT, INC., individually and on behalf of Equitable Life Assurance Society; Richard R. Smith; Ned Spieker; J & L Farms, Inc.; Hein Ranch Company, Appellants,**

v.

**Paul B. ANDREW, Trustee, Appellee.**

Nos. 87–2928, 88–1767.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 16, 1988.

Withdrawn from Submission Dec. 16, 1988.

Resubmitted March 5, 1990.

Decided March 12, 1990.

Anson Reinhardt, Kornfield, Paul & Bupp, Oakland, Cal., and Timothy W. Hoffman, Santa Rosa, Cal., for appellants.

Jeffrey J. Goodrich, Buchalter, Nemer, Fields & Younger, San Francisco, Cal., and Jeremy D. Weinstein, San Francisco, Cal., for appellee.

Before FLETCHER and BEEZER, Circuit Judges, and KING,* District Judge.

FLETCHER, Circuit Judge:

The trustee in bankruptcy of Loretto Winery Limited commenced the action that underlies this appeal to avoid statutory liens under 11 U.S.C. § 545. Les Saslow and Valley Farm Management, Inc., lienholders under California's producer's lien statute, appeal the affirmance by the bankruptcy appellate panel (BAP) of summary judgments in favor of the trustee in bankruptcy. We have no jurisdiction over Saslow's appeal but reverse in Valley Farm's.

---

## JURISDICTION

Saslow filed his notice of appeal 31 days after the bankruptcy appellate panel entered judgment. A prospective appellant must file notice of appeal within 30 days of the entry of judgment. 28 U.S.C. § 2107; Fed.R.App.P. 4(a).[1] "The 30–day time limit is 'mandatory and jurisdictional.'" *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978) (quoting *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960)). We therefore do not have jurisdiction to hear Saslow's appeal. Valley Farm's appeal was timely, and we have subject matter jurisdiction under 28 U.S.C. § 158(d).

## FACTS

The facts are not in dispute. Valley Farm sold grapes to Loretto Winery, which processed them for wine and wine products. In November 1985, eight days after Valley Farm's last delivery to the winery, Loretto Winery filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The case was later converted to Chapter 7, and appellee Paul Andrew was appointed trustee. He sued in bankruptcy court, seeking to avoid Valley Farm's producer's lien on partially processed grapes it had delivered to Loretto Winery. The bankruptcy court granted summary judgment in favor of the trustee, holding that 11 U.S.C. § 545(2) permits the trustee to avoid the producer's lien. The bankruptcy appellate panel affirmed. In this appeal, Valley Farm argues that the trustee may *not* avoid the producer's lien under § 545(2) and that summary judgment was thus improper. We agree.[2]

## DISCUSSION

### The Bankruptcy Code

Section 545 of the Bankruptcy Code, 11 U.S.C. § 545, dictates when a trustee

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. Appeals from a bankruptcy appellate panel generally are to be taken in the same way as appeals from the district courts. 28 U.S.C. § 158(c).

2. Appellants also argue that appellee did not adhere to the Northern District of California's local rules in filing his motion for summary judgment. We find it unnecessary to consider this claim given our conclusion on the lien issue.

can avoid a statutory lien. Under subsection (1), the trustee can avoid liens that first arise only upon the debtor's bankruptcy or insolvency. Congress has perceived such liens to be thinly disguised attempts to impose state-determined priorities in bankruptcy. The California producer's lien law arises upon delivery of the products and does not depend on the processor's financial downfall. Accordingly, the trustee cannot rely on subsection (1) to avoid the lien.

Subsection (2) allows the trustee to avoid a lien that "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists" (the hypothetical bona fide purchaser test).[3] This appeal focuses on this test's application to the California producer's lien. Because the trustee's avoidance power is a question of law, we review *de novo*. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984). Whether the lien is enforceable against a bona fide purchaser is determined under state law. *In re Phillips Constr. Co.*, 579 F.2d 431, 432 (7th Cir.1978) (upholding validity of mechanic's lien); *cf. In re Marino*, 813 F.2d 1562, 1565 (9th Cir.1987) (powers of 11 U.S.C. § 544(a) bona fide purchaser of real property defined by state law).[4]

Appellee claims most broadly that, on a fundamental level, bankruptcy policy is frustrated if the producer's lien gives producers priority over other creditors. A central policy of federal bankruptcy law is distribution of the bankrupt's assets ratably among creditors. *In re Lewis F. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir.1985). Federal bankruptcy law nevertheless also recognizes that social, economic, or political policy sometimes justifies deviations from a strict rule of equity. S.Rep. No. 1159, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 2442, 2456, 2456 (discussing 1966 amendments to Bankruptcy Act predecessor to section 545). Courts look to state law to determine the "underlying property interests and commercial arrangements" at issue in bankruptcy proceedings. *Selby v. Ford Motor Co.*, 590 F.2d 642, 646 (6th Cir.1979) (citing *Chicago Bd. of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1923)); *see also In re Anchorage Int'l Inn, Inc.*, 718 F.2d 1446, 1451 (9th Cir.1983) (applying state law in determining that lien on liquor license survived section 545 avoidance).

Incorporating both of these policies into bankruptcy law results in natural tensions—not all creditors will end up in equal positions when state law diffentially values their interests in ways not preempted by federal bankruptcy law. States cannot, of course, baldly impose their own priorities on federal bankruptcy proceedings. *See* S.Rep. No. 1159, *supra,* at 2456–2462; 2 Norton on Bankruptcy Law & Practice § 31.01 (1981). Federal bankruptcy law does, however, bow to state statutory liens that meet certain criteria. The state preferences established in accordance with these lien statutes do not, therefore, conflict with federal bankruptcy policy; they are affirmatively a part of that policy if they survive the tests in section 545. As we said in addressing a trustee's effort to avoid an Alaska lien, a supplier's lien is but an example of an interest "in particular property, created pursuant to state statute[ ], that [is] fully respected by the general bankruptcy law"; the Alaska lien did "not conflict with the federal distribution scheme because there is no general federal policy against state-created liens that favor one class of creditors over others." *Anchorage Int'l Inn*, 718 F.2d at 1451; *see also id.* at 1450 n. 3 (quoting Jackson, *Bankruptcy and the Creditors' Bargain,* 91 Yale L.J. 857, 905–06 (1982)) (" '[a]ll state-created entitlements act in favor of

---

3. Subsections (3) and (4) permit the trustee to avoid liens for rent or of distress for rent.

4. Appellee claims that we should define the bona fide purchaser's attributes according to

*federal* law. We find this inconsistent with the rule that enforcement against a bona fide purchaser is determined under state law.

some group of creditors, but bankruptcy law generally recognizes them nonetheless' "); Collier on Bankruptcy ¶ 545.01 at 545–6 (15th ed. 1989) ("Section 545 is one of those provisions of the Bankruptcy Code in which, notwithstanding the constitutionally enjoined principle of uniformity, Congress has deferred to local policy as expressed in statutes that vary from state to state.").

■ The BAP held that the trustee can avoid the California producer's lien because it is a secret lien, and California law disfavors upholding secret liens to the injury of innocent subsequent purchasers. *In re Loretto Winery*, 81 B.R. 573, 575–78 (Bankr. 9th Cir.1987). Section 545 does not permit a trustee to avoid a lien, however, just because it is secret. In this case, the trustee can avoid the lien only if it is not good against a bona fide purchaser under California law.

*Case Law in Other Circuits*

The fifth circuit is the only other circuit to examine whether section 545(2) allows a trustee to avoid a statutory lien when the statute has no formal perfection requirements. It has decided the *issue* four times, twice under section 545(2) and twice under its predecessor statute, section 67(c)(1)(B) of the Bankruptcy Act.[5] Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, *repealed by* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 401(a), 92 Stat. 2549, 2682 (section 67(c)(1)(B) was formerly codified as amended in 1966 at 11 U.S.C. § 107(c)(1)(B)). Each time the type of lien and the factual circumstances were very similar to those encountered in this case. *In re Martin Exploration Co.*, 731 F.2d 1210 (5th Cir.1984); *In re Tape City,*

*U.S.A., Inc.*, 677 F.2d 401 (5th Cir.1982) (per curiam); *In re Lowery Bros., Inc.*, 589 F.2d 851 (5th Cir.1979); *In re Trahan*, 283 F.Supp. 620 (W.D.La.), *aff'd*, 402 F.2d 796 (5th Cir.1968) (per curiam) ("The district court wrote a well-reasoned and exhaustive opinion which fully sets forth the factual and legal issues involved."), *cert. denied sub nom. Bernard v. Beneficial Fin. Co.*, 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969). In all four cases, the court found, as we do today, that the trustee or debtor-in-possession cannot avoid the lien.

In each case, the lien arose automatically with no formal perfection requirements. In *Trahan, Tape City*, and *Martin Exploration*, a Louisiana vendor's lien was at issue that could be defeated under Louisiana law if the original vendee had relinquished possession of the property.[6] The original vendees, in each case, had possession when they filed for bankruptcy; in applying the bona fide purchaser test, the court refused to assume that they had parted with possession. (In other words, the court refused to allow the trustee to assume the position of a hypothetical person who could have taken free of the lien had he taken possession prior to the filing in bankruptcy.) The court concluded in both cases that the hypothetical bona fide purchaser, into whose shoes the debtor-in-possession or trustee stepped, could avoid the lien only if both title and physical possession had passed to the bona fide purchaser prior to bankruptcy. *Martin Exploration*, 731 F.2d at 1213; *Tape City*, 677 F.2d at 403; *Trahan*, 283 F.Supp. at 627–28.

In *Lowery Bros.*, under the Florida mechanic's lien statute, the supplier lost its lien on materials not incorporated in the construction project if the materials were

---

**5.** Section 545 is derived from and substantively similar to section 67(b)(c) of the Bankruptcy Act as amended in 1966. *See* S.Rep. No. 989, 95th Cong., 2d Sess., at 85, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5871; H.Rep. No. 595, 95th Cong., 2d Sess., at 371, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6327; Collier on Bankruptcy, *supra*, ¶ 545.04, at 545–13. Section 67(c)(1)(B) is section 545(2)'s direct ancestor. Congress apparently did not intend to change the Act's approach to statutory liens in enacting the Code. *Id.* ¶ 545.01(3), at 545–5.

*See generally* S.Rep. No. 989, *supra*, at 1–3, 5–6, 85–86, *reprinted at* 5787–89, 5791–92, 5871–72; H.Rep. No. 595, *supra*, at 1–6, 371, *reprinted at* 5963–68, 6327.

**6.** That the lien arises under Louisiana's civil law system makes no difference in this setting. Section 545 makes no distinction between statutory liens under common law and civil law systems, and the very nature of a statutory lien makes its application similar under either.

transferred from the job site. The materials supplier in *Lowery Bros.* repossessed unused materials from the bankrupt before any transfer from the job site. The court did not assume transfer had occurred in applying the bona fide purchaser test and found the lien good against a hypothetical bona fide purchaser.

Two other circuits have addressed the trustee's avoidance power under section 67(c)(1)(B) of the Bankruptcy Act. In *In re J.R. Nieves & Co.*, 446 F.2d 188 (1st Cir. 1971), the first circuit held the trustee could avoid a Puerto Rican lien "for the construction, repair, preservation, or for the amount of sale" of personal property remaining in the possession of the debtor. The court assumed that the hypothetical bona fide purchaser had taken possession because, it determined, under Puerto Rican law, a characteristic of a bona fide purchaser was possession of the property. *Id.* at 192.[7] The court therefore took the same approach as the fifth circuit, asking whether the lien was valid against a bona fide purchaser under state law, but concluded that the Puerto Rican lien was not good against a bona fide purchaser under Puerto Rican law.[8]

In the final case considering a statutory lien under the bankruptcy avoidance provision, *In re Mission Marine Assocs., Inc.*, 633 F.2d 678 (3d Cir.1980), the third circuit confronted a supplier's lien for yacht engines on "the vessel and her apparel." The lien had no formal perfection requirements and, crucially, was nonpossessory—it stayed with the vessel regardless of possession. The court found that New Jersey law protects bona fide purchasers without notice of a nonpossessory supplier's lien from the supplier's seizure of the property, in this case, the entire yacht. *Id.* at 681.

In each of these cases decided by the other circuits, the court addressed the specific question whether the lien would be good against the hypothetical bona fide purchaser under state law. Because, under the scheme of the Bankruptcy Code, a statutory lien's validity against a bona fide purchaser is determined under state law, we conclude that the proper inquiry is whether the particular lien is good against a bona fide purchaser under the laws of the state, California in this case. Examining the California producer's lien statute, itself, persuades us that the lien passes this test.

## The California Lien Law

The producer's lien is central to an extensive California statutory scheme giving farm product producers a lien on all farm products they sell. Cal.Food & Agric.Code §§ 55631–55653 (West 1986 & Supp.1989).

> Every producer of any farm product that sells any product which is grown by him to any processor under contract, express or implied, in addition to all other rights and remedies which are provided for by law, has a lien upon such product and upon all processed or manufactured forms of such farm product for his labor, care, and expense in growing and harvesting such product.

§ 55631. "[T]he clear legislative intention and purpose behind [the lien statute] is that the producers shall be assured full payment for their farm products...." *McKee v. Bell–Carter Olive Co.*, 186 Cal.App.3d 1230, 1237, 231 Cal.Rptr. 304, 308 (1986). The California legislature has declared that

---

**7.** The court noted first that, in Puerto Rico, "[o]wnership is in the seller, not the buyer, *before* delivery." *Id.* The court also remarked that a bona fide purchaser could be a pledgee, and that the pledgee or a third party—not the creditor—must take possession for the pledge contract to be valid. *Id.* at 192–93 & n. 8.

The court stated that a bona fide purchaser could be a pledgee in Louisiana also and that a pledge is superior to the seller's lien in both Louisiana and Puerto Rico. The court asserted that the fifth circuit did not consider this point in analyzing the interplay between the Louisiana lien and the bankruptcy avoidance provi-

sion, leading in part to its "mistaken" conclusion that the bona fide purchaser need not be assumed to have taken possession. *Id.* at 192–93 & nn. 7–8.

**8.** Although the court stated that "when Congress spoke of the 'rights' of a bona fide purchaser [in section 67(c)(1)(B)], it contemplated a full-blooded, not an anemic, purchaser," the opinion supports the view that what constitutes "full-blooded" is determined under state law. *See id.* at 192 n. 6 ("Whether a given person is a bona fide purchaser ... is defined by state law.").

the producer's lien provisions are to be liberally construed to accomplish the Food and Agricultural Code's purposes: "promoting and protecting the agricultural industry" and "protect[ing] the public health, safety, and welfare." Cal.Food & Agric. Code § 3 (West 1986); *see also McKee,* 186 Cal.App.3d at 1242, 231 Cal.Rptr. at 312 (lien statute is "remedial and thus entitled to liberal construction"). California law traditionally has favored liens like the producer's lien:

> The traditional policy favoring the laborer or material supplier presupposes that their interest differs substantively from that of creditors, whose interest in real property or chattel remains essentially pecuniary. The laborer or material supplier has invested his labor, or added materials originally in his possession, to improve property of another and increase its value. They thus "have, at least in part, created the very property upon which the lien attaches...."

*Industrial Asphalt, Inc. v. Garrett Corp.,* 180 Cal.App.3d 1001, 1006, 226 Cal.Rptr. 17, 19 (1986) (quoting *Connolly Dev't, Inc. v. Superior Court,* 17 Cal.3d 803, 825, 553 P.2d 637, 652, 132 Cal.Rptr. 477, 492 (1976) (quoting *Tuttle v. Montford,* 7 Cal. 358, 360 (1857)), *appeal dismissed,* 429 U.S. 1056, 97 S.Ct. 778, 50 L.Ed.2d 773 (1977)). The sense underlying the statutory scheme is that other creditors should not be allowed to benefit from the pockets of laborers and suppliers who have increased the estate's value or, indeed, have created it. *See Industrial Asphalt,* 180 Cal.App.3d at 1006, 226 Cal.Rptr. at 19 (purpose of mechanic's lien is "to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier") (citing *Avery v. Clark,* 87 Cal. 619, 628, 25 P. 919, 921 (1891)); 4 Collier on Bankruptcy, *supra,* ¶ 545.01, at 545–6 ("Statutory liens in favor of such beneficiaries as contractors, mechanics, and materialmen secure persons who have contributed to an enhancement of the value of the debtor's estate, and to withhold protection of such liens in bankruptcy cases would give a windfall to the other creditors.").

■ In analyzing whether the trustee can avoid the California lien law, section 545(2) places the trustee in the shoes of a hypothetical bona fide purchaser. Even though in a sense hypothetical, we do not take this bona fide purchaser outside the factual framework of the case under decision. In this case, the debtor, and therefore the trustee, had possession of the grapes when it filed for bankruptcy.[9] Under the California statute, the lien remains on the grapes only as long as the processor retains possession. § 55634. Congress has determined that state law should determine the property interests underlying bankruptcy disputes; and under California state law, the lien lives or dies based on possession. We will not violate Congress's intent and ignore state law by assuming that the hypothetical bona fide purchaser has possession when the debtor actually had possession at the moment of bankruptcy. *See Trahan,* 283 F.Supp. 626 (section 545(2)'s predecessor, section 67(c)(1)(B) of the Bankruptcy Act, "does not require the assumption that a 'bona fide purchaser' be in possession of the thing sold which is subject to the vendor's privilege," although under the state law the vendee must have retained possession for the lien to be valid); *cf. Mission Marine,* 633 F.2d at 681 (with nonpossessory lien, though bankrupt still had possession when bankruptcy filed, court assumed hypothetical bona fide purchaser did not); *J.R. Nieves,* 446 F.2d at 192 (assuming the hypothetical bona fide purchaser to have possession because a characteristic of a bona fide purchaser under Puerto Rican law is possession).

■ We look to the words of the statute itself in our quest to determine wheth-

---

9. We cannot accept appellee's argument that a hypothetical transfer between the debtor and the trustee has resulted in a change of possession. First, we agree with the fifth circuit that "we cannot accept [the trustee's] argument that the mere filing of bankruptcy somehow transfers physical possession of the goods." *Tape City,* 677 F.2d at 403–04. Second, this would create an anomalous distinction between debtors-in-possession and trustees. A trustee would be able to avoid the statutory lien while the debtor-in-possession would not, even with all other circumstances identical. We do not think Congress intended this result.

er the lien passes the bona fide purchaser test. In doing our analysis, we follow the accepted rules of statutory construction: we construe to fulfill the law's purpose; we construe in the context of the entire statutory scheme; we avoid inconsistency; we avoid superfluity and nullities; we give language its ordinary meaning; and we favor the more reasonable result. *Lungren v. Deukmejian,* 45 Cal.3d 727, 735, 755 P.2d 299, 304, 248 Cal.Rptr. 115, 120 (1988). Finally, as noted, we construe the statute liberally to achieve its purposes. *McKee,* 186 Cal.App.3d at 1242, 231 Cal. Rptr. at 312; Cal. Food & Agric. Code § 3.

The lien arises upon delivery of any portion of the product, § 55632, and is complete from the date of last delivery, § 55635. There are no formal requirements to perfect the lien, such as recording or filing. The lien attaches to all of the product, raw or in its processed forms, regardless of segregation, as long as they remain in the processor's possession. § 55634.[10] The lien is preferred and is "prior in dignity to all other liens, claims, or encumbrances" except wage and salary claims for services rendered to the processor after the product's delivery and warehousers' liens. § 55633. The lien exists to the full extent necessary to cover the amount owed the producer, but product in excess of that amount may be sold. §§ 55631, 55638. The processor may also sell product not in excess of the amount owed as long as the processor applies the proceeds to pay off the lien. § 55638. The statute provides for various means of releasing the lien. § 55637. Upon release, the processor can dispose of the product any way it likes. § 55640. The lien does

not, therefore, disrupt the flow of commerce as long as the processor fulfills its obligations.

There are distinct adverse consequences, however, to the processor that does not meet its obligations under the lien statute. Section 55640 permits sale, transport, or disposal of the product only if the producer's claims are paid. A producer suing to enforce the lien, § 55636, may get an injunction "to restrain the doing of any acts on the part of [the] processor which are designed to or which would, in effect, remove any processed product in his possession or under his control and upon which valid liens exist, beyond the process of the court, to plaintiff's injury." § 55651.

Most forcefully, however, section 55638 makes it "unlawful for any processor to remove, from this state or beyond his ownership or control, any farm product which is delivered to him, or any processed form of the farm product, to which any of the liens provided for in this chapter has attached...." Section 55872 adds that the processor's non-payment is a violation of the Food and Agricultural Code.[11] Such a violation not only subjects the processor to suspension or revocation of its processor's license, § 55841, and civil penalties of up to $500 per violation, § 55922, but also constitutes a misdemeanor punishable by a fine of not less than $500 and up to $2000 and one year in the county jail, §§ 55901, 55905, 55906.[12] These provisions fairly shout that California intends to protect producers' liens from defeat. The legislature not only prohibited sales and actions that would defeat the lien unless the processor satisfied the lien, it also declared such actions by the

---

**10.** The legislature recently amended this provision in 1986 to provide that products stored in a warehouse by processors remain in the processors' possession, preventing them from escaping the lien by the simple maneuver of storing the product in a third party's warehouse.

**11.** "It is a violation of this chapter if the applicant [for a processor's license], or licensee, has failed or refused to pay for any farm product at the time and in the manner which is specified in the contract with the producer, or as is otherwise provided in this chapter."

**12.** Section 55906 states generally that "[i]t is a misdemeanor for any person that is subject to this chapter to fail to comply with this chapter." Section 55905 provides more specifically,

It is a misdemeanor for any person that is subject to this chapter to sell, hypothecate, sequester with intent to defraud any producer, or in any manner place or attempt to place any product upon which liens in favor of any producer have attached, beyond the control, reach, or recovery of any such claimant.

Section 55901 prescribes the punishment for these misdemeanors.

processor criminal conduct subject to criminal penalties.

■ Contracts for transactions that violate the law are illegal and void under California law. *See, e.g., Severance v. Knight–Counihan Co.,* 29 Cal.2d 561, 568, 177 P.2d 4, 8 (1947) ("It is settled that a contract must have a lawful object and that a contract for an object prohibited by a penal law is void." (citations omitted)); *Smith v. Bach,* 183 Cal. 259, 262–63, 191 P. 14, 15 (1920); *Tevis v. Blanchard,* 122 Cal. App.2d 731, 737–38, 266 P.2d 85, 90 (1954). Thus, contracts for sale of the product subject to the lien are void when the processor does not use the proceeds to pay off the lien.[13]

■ California courts have made exceptions to the general non-enforcement rule. In *Lewis & Queen v. N.M. Ball Sons,* 48 Cal.2d 141, 151, 308 P.2d 713, 719 (1957), the court stated that an exception could be made if the statute making the conduct illegal excludes the additional nonenforcement penalty, the illegal behavior is best deterred by enforcing the contract rather than declaring it void, or the result of not enforcing the contract is disproportionately harsh considering the nature of the illegality. After stating that, in each case, "how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved," the court held that none of the rationales applied in the case at hand. *Id.*

A California court of appeal enforced an illegal contract when the transaction had been completed and the damage already done. *Norwood v. Judd,* 93 Cal.App.2d 276, 209 P.2d 24, 29–31 (1949). The court reasoned that declaring the contract void would not protect the public from further damage and would actually result in the contracting party most morally at fault being unjustly enriched at the other's expense.

None of these exceptions merit application in this case.[14] The statute does not exclude finding such contracts void; prohibiting such contracts is vital to its scheme. Processors are best deterred from cheating producers by voiding such contracts. Nonenforcement also is not disproportionately harsh, considering the legislative statement that the illegality merits criminal penalties. The *Norwood* rationale does not apply because the contract between a bona fide purchaser and a processor *still in possession* is not yet completed; the product must still be delivered. Finally, nonenforcement will not unjustly enrich the most morally-at-fault party.

Voiding the contract between the purchaser and processor where the processor has not applied the proceeds to the lien and declaring the contract illegal results in an internally consistent interpretation of the statute, while finding the contract legal and enforceable under these conditions would do violence to the statute. First, enforcing the contract would make section 55638 a nullity. Under that provision, selling the products is not prohibited if the sale proceeds are used to satisfy the liens. This proviso makes application of the pro-

**13.** Appellee argues that Cal.Civ.Code § 3440 (West Supp.1989) supports viewing the hypothetical bona fide purchaser as a purchaser to whom possession has been transferred. Section 3440(a) states:

Except as otherwise provided in this chapter, every transfer of personal property made by a person having at the time the possession of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the property, is void as against the transferor's creditors (secured or unsecured) at the time of the transfer and those who become creditors while the transferor remains in possession and the successors in interest of those creditors, and as against buyers from the transfer-

or for value in good faith subsequent to the transfer.

Appellee argues that because a contract for sale of personal property is void against the lienor, the hypothetical bona fide purchaser must be assumed to have possession. We disagree. Section 3440 is actually in lockstep with the producer's lien law in making such a contract void. Taking the hypothetical bona fide purchaser to appellee's proposed fictional extreme is contrary to Congress's intent that we rely on state law and its distinctions in determining property rights in bankruptcy.

**14.** Witkin discusses other possible exceptions, none of which are pertinent here. 1 B. Witkin, Summary of California Law *Contracts* §§ 451–453 (9th ed.1987).

ceeds to satisfy the lien a condition of the sale's validity. *See Stockton v. Weber*, 98 Cal. 433, 440, 33 P. 332, 334 (1893) (a proviso "always implies a condition, unless subsequent words change it to a covenant"); *Sherman v. County of Santa Barbara*, 59 Cal. 483, 484 (1881) (proviso implies that the general provision has no effect unless the proviso is given effect).

Second, it makes no sense to find the sale contract legal when section 55905 makes the sale itself criminal. This would make section 55905 a nullity. Section 55905 cannot be understood to make the illegality the failure to use the proceeds to satisfy the lien, as opposed to the sale itself. This is not the equivalent of a "sale." What section 55905 makes illegal is the sale itself when accompanied by the seller's failure to apply the proceeds to the lien's satisfaction.

This interpretation of the statute best fulfills the legislative intent. The grower prevails, preventing the processor from completing a sale and transferring the product subject to the lien in violation of sections 55638, 55640, and 55905; and the buyer has available remedies. *See, e.g., Stenger v. Anderson*, 66 Cal.2d 970, 977, 429 P.2d 164, 169–70, 59 Cal.Rptr. 844, 849–50 (1967) (rescission available to relatively innocent party); *Tevis*, 122 Cal. App.2d at 738, 266 P.2d at 90 (securities purchaser may rescind, sue for money damages, or sue for money had and received when sale contract held void). If the buyer were to prevail, however, in accordance with appellee's suggested interpretation, the processor would transfer possession of the product, directly contravening sections 55638 and 55640 and subjecting itself to punishment under section 55905. We can and should avoid this unreasonable result. *See Lungren*, 45 Cal.3d at 735, 755 P.2d at 304, 248 Cal.Rptr. at 120.

■ This conclusion as to the meaning and effect of the producer's lien statute cannot be defeated simply by citing California's protection of bona fide purchasers against secret liens. *E.g., Caito v. United Cal. Bank*, 20 Cal.3d 694, 702, 576 P.2d 466, 470, 144 Cal.Rptr. 751, 755 (1978); *Smitton v. McCullough*, 182 Cal. 530, 538,

189 P. 686, 690 (1920); *Schut v. Doyle*, 168 Cal.App.2d 698, 702, 336 P.2d 567, 569 (1959). Secrecy and general policy toward bona fide purchasers are not strictly the issues under section 545. The appropriate inquiry is whether *this* lien is good against a bona fide purchaser under the California statutory scheme. We conclude that the producer's lien is indeed good against a bona fide purchaser without possession under California law when the proceeds are not used to satisfy the lien. The statute prohibits sales under these circumstances and declares the processor who attempts them guilty of a crime. The contract would be void, as if it had never been made, permitting the producer to enforce the lien.

Our analysis and decision find support in a recent opinion from our circuit, *In re Badger Mountain Irrigation Dist.*, 885 F.2d 606, 608–10 (9th Cir.1989). The panel there affirmed the district court, holding that the bankrupt irrigation district could not avoid a statutory bondholder's lien under section 545(2). Under a Washington statute governing the irrigation district, the irrigation's bondholders were given a lien on all property acquired by the district through foreclosure of member landowners who had not paid their district assessments. The panel detailed the "pervasive and many" protections provided by the statute for the bondholders and their lien. After analyzing the statutory scheme, the panel concluded that "the structure of the irrigation district law precludes the existence of a hypothetical bona fide purchaser in the context of the Bondholders' lien." *Id.* at 609. The protections afforded the producers under the California statute are at least as strong as those granted the bondholders in the Washington statute, and probably more so, given the California law's criminal provisions. Thus, *Badger Mountain* strongly reinforces our view that section 545(2) does not enable the Loretto Winery trustee to avoid the California producer's lien.

## CONCLUSION

The California producer's lien is good against a bona fide purchaser when the

processor has sold the product but retains possession and does not apply the proceeds to satisfy the lien. Loretto Winery had possession of the grapes when it filed for bankruptcy, and so its trustee cannot avoid the lien. The BAP's affirmance of summary judgment for the trustee is reversed, and the case is remanded to the BAP with directions to reverse and remand to the bankruptcy court.

BEEZER, Circuit Judge, dissenting:

I respectfully dissent. I would affirm and hold that the Producers' lien is not enforceable against a bona fide purchaser.

Section 545(2) of the Bankruptcy Code allows a trustee to avoid a lien that

> is not perfected or enforceable on the date of the filing of the petition [for bankruptcy] against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists.

11 U.S.C. § 545(2). Federal preemption makes this law superior to any state scheme of creditor priorities. *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929) (citing U.S. Const. art. I, sec. 8, cl. 4). Congress intended the avoiding power of the trustee to be pursued vigorously. H.R. Doc. No. 127, 93d Cong., 1st Sess. 212, *quoted in In re Hughes*, 9 B.R. 251, 257 (Bankr.W.D.La. 1981). "[I]f all statutory liens, regardless of what they were in substance, were to be treated as liens in bankruptcy, the order of federally created priorities would be completely disrupted." S.Rep. No. 1159, 89th Cong., 2d Sess. 2–3, *reprinted in* 1966 U.S. Code Cong. & Admin.News 2456, 2457.

Although the language of section 545(2) may be difficult to apply, it is not difficult to construe. The lien is avoidable if it could not be enforced against a hypothetical bona fide purchaser.

Other circuits have addressed the question presented. *See In re Mission Marine Associates*, 633 F.2d 678 (3d Cir.1980); *In re Tape City, U.S.A., Inc.*, 677 F.2d 401 (5th Cir.1982) (per curiam). In *Mission Marine Associates* a New Jersey statute provided a non-possessory materialman's

lien for work done on marine vessels prior to launching, but did not require recording. As in this case, there was no clear instruction in the state's caselaw. 633 F.2d at 861. However, the Third Circuit discerned a state "policy concerning the protection of bona fide purchasers against secret non-possessory liens...." *Id.* The court determined that the Supreme Court of New Jersey "would apply [this] policy to protect a [buyer] who purchased from Mission Marine without notice of [the creditor's] claim." *Id.*

The Fifth Circuit has addressed this issue in at least four cases. *See In re Martin Exploration Co.*, 731 F.2d 1210 (5th Cir.1984); *In re Tape City, U.S.A., Inc.*, 677 F.2d 401 (5th Cir.1982) (per curiam); *In re Lowery Bros., Inc.*, 589 F.2d 851 (5th Cir.1979); *In re Trahan*, 402 F.2d 796 (5th Cir.1968). Although the relevant statutes did not require filing or otherwise provide for notice, the court held in each case that the trustee or debtor-in-possession could not avoid the statutory lien. In fact, the court simply noted that the statutes did not require filing. It has yet to acknowledge the impact of a policy against secret liens.

I find the Third Circuit's reasoning in *Mission Marine Associates* to be more persuasive than that of the Fifth Circuit. At least one commentator agrees:

> Because of its inherent advantages, the "notice" approach should be uniformly adopted by the bankruptcy courts. The "notice" approach best enforces the congressional intent underlying the bona fide purchaser test. Under this approach, the states are properly limited in their use of statutory liens. If the states want to give certain groups of creditors secured status, then they may give these creditors lien rights that are evidenced in general commerce by a notice filing. Furthermore, bankruptcy courts can readily administer the "notice" approach. This approach reduces the ambiguity created by the hypothetical bona fide purchaser status of the trustee in bankruptcy. The courts more easily can determine if this hypothetical entity could

have had notice of a particular lien than they can determine what type of purchaser he is or what actions beyond purchase he may or may not be supposed to have taken.

Note, *The California Agricultural Producer's Lien, Processing Company Insolvencies, and Federal Bankruptcy Law: An Evaluation and Alternative Methods of Protecting Farmers,* 36 Hastings L.J. 609, 621–23, 628 (1985).

California's courts have not considered the enforceability of the producer's lien against bona fide purchasers.[1] California courts, however, like the New Jersey courts, have a longstanding policy *against* upholding liens that fail to give notice to subsequent purchasers. *See Schut v. Doyle,* 168 Cal.App.2d 698, 702, 336 P.2d 567, 569 (1959); *cf.* G. Gilmore, Security Interests in Personal Property § 14.1, at 439 (1965) ("The antagonism to the 'secret lien' runs through [California's] law of sales and secured transactions alike.").

The producer's lien does not give notice to subsequent purchasers. There is no notice or filing requirement; rather, the lien is completed and attaches upon delivery of an agricultural product to a processor. Cal.Food & Agric.Code §§ 55632, 55635. The Producers' argument that a hypothetical bona fide purchaser would have constructive notice is unconvincing. The argument is unsupported by California case law,[2] what law there is holds the opposite. When the legislature has enacted a lien without provisions requiring filing or recordation, the lien will be enforced "so far as it can ... without injury to the rights of bona fide purchasers." *Finnell v. Finnell,* 156 Cal. 589, 594, 105 P. 740, 742 (1909).[3]

Our recent decision in *In re Badger Mountain Irrigation District,* 885 F.2d 606 (9th Cir.1989), does not conflict with this analysis. In that case we emphasized that "[t]he comprehensive statutory scheme gives notice to anyone purchasing land from the District that the land is encumbered." *Id.* at 610. We noted that [a]n examination of the District's claim of title would show that the District's acquisition of the land had been accomplished pursuant to foreclosure proceedings under [the Washington statute]. [The statute requires that] [t]he Superior Court order ratifying the formation and election of directors of an irrigation district ... be filed with the auditor and assessor of any county in which the district property is located.... Additionally, the statute requires an order to be filed, noted, and carried forward in the county assessor's office opposite the legal description of every parcel of land in the district.

*Id.* at 610. Under Washington law, such a properly recorded instrument is constructive notice of the rights created by the instrument and of all recitals in the instrument. *Id.* at 610, n. 5 (citing *Jones v. Berg,* 105 Wash. 69, 177 P. 712, 717–18 (Wash. 1919)). No such instrument was filed in this case. Therefore, a hypothetical bona fide purchaser cannot be held to have had constructive notice of the lien.

In a proceeding before another panel of this court, *In re Sacramento Foods, Inc.,* No. 88–2749, the Producers have pointed out that California law makes it unlawful to sell liened products, and argue that the creation of a hypothetical bona fide purchaser would force the trustee to commit an unlawful act. This convoluted argument was neither made nor briefed by the parties in this appeal, nonetheless, it is easily dismissed.

In the first place, the argument strays from the language of section 545(2). The

---

1. "[T]he determination of whether a state statutory lien is enforceable against a bona fide purchaser is governed by the law of the state which created the lien." *In re Tropicana,* 24 B.R. 381, 382–83 (Bankr.C.D.Cal.1982).

2. The decisions referred to by the Producers in their briefs hold that possession by the party who also holds the security interest may impart constructive notice to a subsequent purchaser.

3. The California Legislature does at times provide for the impact of a lien on subsequent purchasers. *E.g.,* Cal.Food & Agric.Code § 55702(b) (livestock lien). Its failure to do so with the producer's lien indicates that the normal notice requirement should be applied.

Bankruptcy Code does not construct a hypothetical situation in which the trustee takes possession of the liened property and then sells it to a bona fide purchaser. Section 545(2) merely asks: would the lien be enforceable against a bona fide purchaser if one were to exist at the moment the bankruptcy petition was filed. In the second place, the argument overstates the force of the California statutes: it is not illegal to sell the lien produce, it is merely illegal to use the funds from the sale of liened produce other than to satisfy the underlying debt. In the third place, even if the sale of the liened produce was illegal, that would not affect the bona fide nature of the subsequent purchaser. California law recognizes the good title of a bona fide purchaser even if the seller violates the law. Cal.Com.Code § 2403. In innumerable cases, transfer of liened property would violate law. Section 545(2) does not inquire into the legality of the transfer, it asks only whether the lien would be enforceable against a hypothetical bona fide purchaser. To do otherwise would disrupt the ability of the trustee to fairly distribute the assets of an insolvent party according to a federal scheme. *See* Note, *supra,* at 627–28.

The California producer's lien gives no actual or constructive notice to subsequent purchasers. It could not be enforced against a bona fide purchaser.