Filed 9/29/15  Cast In Place Construction, Inc. v. Hamilton Co. 1, LLC CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CAST IN PLACE CONSTRUCTION, INC., | B255475 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC099629) |
| v. | |
| HAMILTON CO. 1, LLC, | |
| Defendant and Appellant; | |
| RICHARD J. LEE et al. and ELY DROMY et al., | |
| Interveners and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard A. Stone, Judge.  Affirmed.

Law Offices of Moses Bardavid and Moses S. Bardavid for Defendant and Appellant.

Anderson, McPharlin & Conners, Jesse S. Hernandez and Arnold W. Holaday for Interveners and Appellants Richard J. Lee et al.

Law Offices of Mary Jean Pedneau, Mary Jean Pedneau, William R. Larr and Susan S. Vignale for Interveners and Appellants Ely Dromy et al.

Edward M. Picozzi for Plaintiff and Respondent.

_____

Defendant Hamilton Co. 1, LLC (Hamilton) appeals from a judgment after a court trial establishing and foreclosing upon a mechanic's lien in favor of plaintiff Cast In Place Construction, Inc. (CIP). Hamilton contends CIP's mechanic's lien was invalid because it omitted statutorily required language from its preliminary notice. It further contends the trial court erred by failing to recognize that Hamilton was a bona fide purchaser, and thus extinguished CIP's mechanic's lien. We conclude the preliminary notice substantially complied with the statute and Hamilton has failed to provide an adequate record to challenge the sufficiency of evidence supporting the trial court's verdict.

We make no determination regarding the interveners' claims to be bona fide purchasers who took title free and clear of CIP's mechanic's lien, as the claims involve factual issues that require adjudication by the trial court. The interveners raised these claims in their postjudgment complaints in intervention, but then immediately appealed without any adjudication of these issues.

## BACKGROUND

The appellate record consists of a clerk's transcript and appendices filed by the interveners. It does not include a reporter's transcript of the trial or a statement of decision. Moreover, the clerk's transcript, which conforms to Hamilton's designation of the record, omits numerous documents that must have been filed in the case, including Hamilton's answer to the operative second amended complaint. Accordingly, we recount the facts alleged in the operative complaint and exhibits thereto. Notably, the facts appear to be undisputed.

CIP entered into a July 5, 2007 written subcontract with general contractor Pulsar Development to supply materials, equipment, and labor for the concrete work entailed in the construction of condominiums in Beverly Hills on land then owned by Springhouse Hamilton Park, LLC (SHP). From September 1, 2007, to July 31, 2008, CIP provided materials and equipment and performed labor. CIP paid its laborers and suppliers, but neither the general contractor nor the land owner paid $123,178 owed to CIP.

2

On October 3, 2007, CIP sent a "Preliminary 20-Day Notice" to Pulsar, SHP, and lender East West Bank by certified mail with return receipt requested.  The notice included the following language:  "NOTICE TO PROPERTY OWNER  [¶] If bills are not paid in full for the labor, services, equipment, or materials furnished or to be furnished, a mechanic's lien leading to the loss, through court foreclosure proceedings, of all or part of your property being so improved may be placed against the property even though you have paid your contractor in full.  You may wish to protect yourself against this consequence by (1) requiring your contractor to furnish a signed release by the person or firm giving you this notice before making payment to your contractor, or (2) any other method or device that is appropriate under circumstances [*sic*]."  The parties agree that this notice complied with then-operative Civil Code section 3097, subdivision (c) (repealed by Stats. 2010, ch. 697, § 16, operative July 1, 2012),[1] except that it omitted the following additional advisement:  "Other than residential homeowners of dwellings containing fewer than five units, private project owners must notify the original contractor and any lien claimant who has provided the owner with a preliminary 20-day lien notice in accordance with Section 3097 of the Civil Code that a notice of completion or notice of cessation has been recorded within 10 days of its recordation.  Notice shall be by registered mail, certified mail, or first-class mail, evidenced by a certificate of mailing.  Failure to notify will extend the deadlines to record a lien."  (Former § 3097, subd. (c)(5).)

On July 22, 2008, CIP sent the lender, Pulsar, and SHP a notice by certified mail with return receipt requested that it had not been paid $123,178 and intended to record a claim of lien unless it was paid by July 25, 2008.  On July 31, 2008, CIP recorded its mechanic's lien with the Los Angeles County Recorder's Office.  The lien claimed $123,178 plus interest and listed the reputed owners as SHP and Pulsar. On September 4,

---

[1] Undesignated statutory references pertain to the Civil Code.  Further, we address and apply the mechanic's lien statutes that were in effect at the time CIP gave notice of, then filed, its mechanic's lien, not those now in effect.

2008, CIP filed suit against Pulsar and SHP, seeking, inter alia, to foreclose its mechanic's lien.

According to the operative complaint, "[O]n January 29, 2010, Defendant [SHP] transferred back the same Property to [Hamilton] . . . pursuant to a Deed in Lieu of Foreclosure."

On February 26, 2010, CIP filed a lis pendens in the trial court, naming Pulsar and SHP but not Hamilton. The lis pendens was recorded on March 25, 2010. Section 3146, which was operative until January 1, 2011, did not require a mechanic's lien claimant to record a lis pendens.

CIP substituted Hamilton for a Doe defendant on April 19, 2010. CIP thereafter filed an amended complaint on August 22, 2011. Hamilton successfully demurred to the only cause of action asserted against it, foreclosure of the mechanic's lien, and CIP filed the operative second amended complaint on April 9, 2012. Hamilton's demurrer to that complaint was overruled.

A court trial was conducted on November 25, 2013, and the court granted judgment in favor of CIP. The written judgment was signed and filed on December 15, 2013. The judgment provided that CIP was "entitled to a decree establishing its Mechanic's Lien" in the amount of $187,230.56 (including interest to the date of the judgment) against the buildings and land described in the lien, i.e., 225-233 South Hamilton Drive, Beverly Hills. The judgment ordered the sale at public auction by the sheriff of "all and singular the premises mentioned herein, or so much as may be sufficient to raise the amounts due plaintiff," including the expenses of the sale.

Hamilton filed a timely appeal. Thereafter, the trial court granted the Lee interveners leave to intervene, and they filed their complaint in intervention against CIP, Hamilton, and Judy and Ely Dromy, then appealed. They subsequently filed an amended complaint. The Lee interveners alleged, inter alia, that they were owners of some of the condominiums, Hamilton fraudulently concealed the existence of the mechanic's lien and litigation when it sold them their condos, and the Dromys were "managing Member[s] of

4

Hamilton" who signed the grant deeds for the condominiums the Lee interveners purchased. The Lee interveners alleged a number of causes of action against Hamilton and the Dromys. With respect to CIP, they sought declaratory relief regarding the enforceability of the judgment as to their properties.

Thereafter, the Dromys obtained leave to intervene, filed their own complaint in intervention, and appealed, all on the same day. Their complaint in intervention named only CIP and sought declaratory relief and to quiet title.

All parties and interveners agreed to stay enforcement of the judgment pending appeal, and the trial court signed and filed their stipulation to that effect.

## DISCUSSION

**1.      Adequacy of CIP's preliminary notice**

**a.      The preliminary notice requirement**

Article XIV, section 3 of the California Constitution provides that "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." The requirements enacted by the Legislature include a requirement that the claimant give a preliminary 20-day notice in accordance with section 3097. Provision and proof of service of the preliminary notice are prerequisites to enforcing a mechanic's lien. (§ 3114.)

In 2007, section 3097 provided, in pertinent part: "'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien, prior to the filing of a stop notice, and prior to asserting a claim against a payment bond, and is required to be given under the following circumstances: [¶]  (a) . . . [E]very person who furnishes labor, service, equipment, or material for which a lien or payment bond otherwise can be claimed under this title, or for which a notice to withhold can otherwise be given under this title, shall, as a necessary prerequisite to the validity of any claim of lien, payment bond, and of a notice to

5

withhold, cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section."

Section 3097, subdivision (c), specified the contents of the preliminary notice, including, "(5) The following statement in boldface type:  [¶]  NOTICE TO PROPERTY OWNER  [¶]  If bills are not paid in full for the labor, services, equipment, or materials furnished or to be furnished, a mechanic's lien leading to the loss, through court foreclosure proceedings, of all or part of your property being so improved may be placed against the property even though you have paid your contractor in full.  You may wish to protect yourself against this consequence by (1) requiring your contractor to furnish a signed release by the person or firm giving you this notice before making payment to your contractor, or (2) any other method or device that is appropriate under the circumstances.  Other than residential homeowners of dwellings containing fewer than five units, private project owners must notify the original contractor and any lien claimant who has provided the owner with a preliminary 20-day lien notice in accordance with Section 3097 of the Civil Code that a notice of completion or notice of cessation has been recorded within 10 days of its recordation.  Notice shall be by registered mail, certified mail, or first-class mail, evidenced by a certificate of mailing.  Failure to notify will extend the deadlines to record a lien."

The final two sentences in the required notice "statement" set forth in the preceding paragraph were added to the statute in 2003 by Senate Bill No. 134 to provide additional protection for mechanic's lien claimants.  The bill was "sponsored and supported by numerous subcontractors and materials suppliers who argue that existing law fails to provide them with enough notice to exercise their rights in a timely manner after a property owner has recorded a notice of completion or cessation."  (Sen. Judiciary Com., Analysis of Sen. Bill No. 134 (2003-2004 Reg. Sess.) Apr. 22, 2003 (Sen. Judiciary Com. Analysis).)  "Existing law provides that a claimant must record a mechanic's lien after he has ceased furnishing labor or supplies and, if no notice of

6

completion or cessation (NOC) has been recorded, within 90 days after completion or cessation of the project. If a NOC has been recorded, the deadline for recording a lien is reduced to 30 days for subcontractors and materials suppliers, and 60 days for an original contractor." (*Ibid.*) A supporter of the bill explained that under then-existing law, "The only way a contractor, subcontractor or material supplier can prevent their mechanic lien legs from being cut from under them is to daily monitor every county recorder's office in each county where they are [working] . . . Otherwise, the owner simply files a silent Notice of completion and walks away with improvements to their property, thereby being unjustly enriched." (Sen. Judiciary Com. Analysis.)

One sponsor of Senate Bill No. 134, the American Subcontractors Association of California, explained that the amendment "protects general contractors, subcontractors, and material providers performing certain private works of improvement by streamlining the notification process. 'Notices of Completion' are intended to be recorded and relied upon by all persons who are parties to constructing a project. Unfortunately, 72% of subcontractors surveyed stated that they do not timely receive this notice. Absent their awareness of a job's completion, they can easily lose their Mechanic's Lien rights in less than one month. [¶] According to the bill's supporters, the reasons that a subcontractor is not notified include 'miscommunications and use of inconsistent names and addresses,' and the fact that some subcontractors do not record their preliminary notices because they are not required to." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 134 (2003-2004 Reg. Sess.) as amended June 19, 2003 (Sen. Rules Com. Analysis); Sen. Judiciary Com. Analysis.)

Senator Figueroa, the author of Senate Bill No. 134, explained, "SB 134 will require the owner . . . to directly notify the original contractor, and any other claimant who has filed a preliminary 20-day lien notice, that the project has been completed. . . This direct notification assures that contractors, subcontractors and suppliers are being duly notified in a timely fashion. Failure by the project owner to provide this notice would extend the time period to file a mechanic's lien to 90 days, as is currently allowed,

and that this extension would be the sole liability incurred for failure to give the notice." (Sen. Judiciary Com. Analysis; Sen. Rules Com. Analysis.)

### b. The doctrine of substantial compliance

"Where the question is compliance with a *statute*, different rules are in play. Even if a statute is considered mandatory, substantial compliance may suffice in some circumstances if the purpose of the statute is satisfied." (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1420.) " ' " " " "Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute." . . . Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. . . . Substance prevails over form.' " " " (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 426.) "The essential inquiry is whether under the circumstances the policies underlying the statute were served." (*Carroll*, at p. 1421.)

The doctrine of substantial compliance is generally applicable even where a statute mandates particular matters. Indeed, the California Supreme Court in *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 (*Stasher*), noted, with respect to the statutory requirements for motor vehicle conditional sale contracts, " 'the form and requisites prescribed by the statute are *mandatory*; a contract which does not *substantially conform* thereto is unenforceable.' " (Italics added.) Thus, the mandatory nature of a statute does not *preclude* application of the doctrine of substantial compliance; instead, there must be substantial compliance with mandatory provisions of a statute.

For example, in *People v. Superior Court* (*Zamudio* ) (2000) 23 Cal.4th 183, the California Supreme Court addressed a trial court's partial compliance with Penal Code section 1016.5, which requires a trial court to advise a defendant of specific potential immigration consequences before accepting a guilty or no contest plea. "Notwithstanding that section 1016.5 expressly provides that, under specified circumstances, 'the court shall administer the following advisement' [citation] and then details a specific, tripartite, form of advisement" (*Zamudio*, at p. 207), the Supreme Court

8

concluded the trial court had substantially complied with the statute by advising a defendant of two of the three potential immigration consequences required by the statute. (*Id.* at p. 208.) The Court reasoned, "if defendant's circumstances at the time of his 1992 plea did not, in fact, allow for the [omitted potential immigration consequence], the advisements he received concerning [the other two potential immigration consequences] would have been in substantial compliance with the requirements of section 1016.5, in that they would have informed defendant of the only consequences pertinent to his situation." (*Ibid.*)

Similarly, in *Stasher*, *supra*, 58 Cal.2d 23, the Supreme Court concluded that an automobile seller substantially complied with all statutory requirements, notwithstanding several nonconforming provisions in a contract that neither misled nor prejudiced the purchaser. (*Id.* at pp. 30–33.) The court stated: "[W]hen there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of noncompliance and thereby transformed into a windfall for an unscrupulous and designing buyer. [Citation.] Section 2982 and its companion provisions of the Civil Code constitute a shield, not a sword, for the use of buyers in proper cases." (*Id.* at p. 29.)

**c.      The applicability of substantial compliance in the context of the preliminary notice requirement of the mechanic's lien law**

Although a few appellate decisions have concluded that only strict, not substantial, compliance with particular aspects of section 3097 will suffice (*IGA Aluminum Products, Inc. v. Manufacturers Bank* (1982) 130 Cal.App.3d 699, 704 [use of registered or certified mail, not merely first class mail]; *Romak Iron Works v. Prudential Ins. Co.* (1980) 104 Cal.App.3d 767, 778 [failure to give notice to construction lender]), others have recognized that substantial compliance with the statute is, or would be, sufficient, even if the claimant in a particular case failed to achieve it. For example, in the case cited by Hamilton for the proposition that substantial compliance is not recognized,

9

*Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1 (*Harold L. James*), the court concluded the claimant was not entitled to pursue its lien because it failed to incorporate the statutory language in its preliminary notice. The notice given stated, "'If bills are not paid in full for labor, services, equipment or materials furnished or to be furnished, the improved property may be subject to mechanic's liens.'" (*Id.* at p. 3.) It thus failed to warn of the danger of losing the property through foreclosure of the lien, even if the property owner had paid the general contractor, and to include the suggestions regarding protection against such a result. In addition, the warning given "appeared in rather small print in the lower right quadrant of the notice, just above the date and signature spaces." (*Ibid.*)

The court in *Harold L. James*, *supra*, 158 Cal.App.3d 1, concluded that the 1976 amendment of section 3097 adding the omitted language about foreclosure notwithstanding payment and requiring "a boldface alert to the property owner" reflected the Legislature's "dissatisfaction with the former statutory language and the manner of its presentation," and, therefore, "the Legislature precluded any judicial finding that use of the former statutory notice would 'substantially comply' with the directive of section 3097, subdivision (c)(5)." (*Id.* at p. 7.) The court then added: "Having concluded that the Legislature's explicit mandate requires a finding that, as a matter of law, plaintiff's use of outdated statutory language in its preliminary notice did not substantially comply with section 3097, we need not speculate as to *what, if any, deviations from the currently specified statutory lien language might permit a court to determine that such deviations did not render the subsequent lien unenforceable.* The extremes are easily characterized; a misplaced comma, or incorrect spelling, would not necessarily render an otherwise perfect notice invalid. Likewise, a complete failure to include the modifications made by the 1976 amendment to section 3097, as occurred in the present case, manifestly does make the resultant lien invalid. [¶] By our holding today, we conclude that the *transmittal* methods and *notice* requirements must be strictly construed. However, the issue of minor errors in the *body* of the notice must be independently addressed on a case-

10

by-case basis, if and when such a case is presented." (*Ibid.*, italics added.) Accordingly, notwithstanding the court's broad language, it expressly acknowledged that, in a proper case, nonconforming language in a preliminary notice might constitute substantial compliance.

In *Industrial Asphalt, Inc. v. Garrett Corp.* (1986) 180 Cal.App.3d 1001 (*Industrial Asphalt*), this Division concluded a claimant had substantially complied with the requirements of section 3097 by sending the preliminary notice to the property owner, even though it failed to send it to the general contractor. (*Id.* at p. 1009.) This court first noted "the purpose of the mechanics' lien [is] to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier." (*Id.* at p. 1006.) "The laborer or material supplier has invested his labor, or added materials originally in his possession, to improve property of another and increase its value. They thus 'have, at least in part, created the very property upon which the lien attaches. . . .'" (*Ibid.*) In support of the "historic preference for the interests of laborers and suppliers," "courts have 'uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.'" (*Id.* at pp. 1006–1007.)

*Industrial Asphalt* noted that other decisions had concluded that the purposes of the preliminary notice provisions are to "alert owners and lenders to possible claims against property or funds arising from contracts otherwise unknown to them"; "afford[] the property owner the chance to protect his real property interest by requiring a bond, by naming both the original contractor and the subcontractor as payees on checks written to pay for the work, or by requiring other proof that the original contractor has paid the subcontractor"; and "shield the statutory scheme from the charge that it deprives owners of property without due process of law." (*Industrial Asphalt*, *supra*, 180 Cal.App.3d at pp. 1006–1007.) Industrial Asphalt provided preliminary notice to "the party who *needed* notice," and failed to provide only to "the one who did *not* need notice (because he knew plaintiff's identity, and owned no real property against which plaintiff could file a lien)." (*Id.* at p. 1008.) Accordingly, the court concluded "that the notice served upon the

11

defendant in the case at bench conformed to the purposes of the statutory notice requirement and sufficed for the plaintiff to perfect his mechanics' lien. To hold otherwise would come close to defeating the lien because of 'meaningless technicalities' [citation] where a property owner properly noticed is not prejudiced by lack of notice to some other party. [¶] We agree with *Wand Corp. v. San Gabriel Valley* [*Lumber*] *Co.* [(1965)] 236 Cal.App.2d 855, 861 [(*Wand*)]: '[W]here the purpose of the [relevant statute] is achieved and no one is prejudiced, technical requirements shall not stand in the way of achieving the purpose of the Mechanics Lien Law.' Here the defendant received proper notice and has made no showing of any prejudice arising from plaintiff's failure to serve notice on the original contractor. Neither does it seem just that the innocent party which pursued its legal rights should suffer instead of the innocent party which, though properly placed on notice, took none of the steps to protect its property interest which the law afforded it." (*Industrial Asphalt*, at pp. 1009–1010.)

*Wand*, *supra*, 236 Cal.App.2d 855, addressed a defect in the lien itself, not the preliminary notice. The opinion is nonetheless important to the applicability of substantial compliance in the present case because it set forth relevant principles recognized by *Harold L. James*, *supra*, 158 Cal.App.3d at page 6, the sole case upon which Hamilton relies to argue substantial compliance is inapplicable. In *Wand*, the claimant failed to list "'the name of the person by whom he was employed or to whom he furnished the materials.'" (*Wand*, *supra*, 236 Cal.App.2d at p. 857.) After reviewing a number of decisions in which the claimant failed to comply precisely with one of the statutory requirements, the court in *Wand* observed: "If there is a single unifying thread which explains most, though not all, of the bewildering array of cases in this field, it is the principle that where the purpose of the requirement of [the statute] is achieved and no one is prejudiced, technical requirements shall not stand in the way of achieving the purpose of the Mechanics Lien Law." (*Id.* at p. 861.) The court ultimately concluded the claimant had substantially complied with the statute: "We hold then that where the prelien notice under section 1193 correctly designates the party who should also be

12

named under section 1193.1, subdivision (j)(4) and where the notice of lien which is recorded is not fraudulent and does not mislead the owner or innocent third persons the mistake is not necessarily fatal to the enforcement of the lien." (*Id.* at p. 862.)

### d. Standard of review

Substantial compliance is a question of law subject to de novo review. (*Twain Harte Homeowners Assn. v. County of Tuolumne* (1982) 138 Cal.App.3d 664, 674.) "The undisputed facts are to be measured against the standards set by statute." (*Community Youth Athletic Center v. City of National City* (2009) 170 Cal.App.4th 416, 427.) "When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

### e. CIP substantially complied with the preliminary notice requirements

As illustrated by the authorities discussed above, including *Harold L. James*, *supra*, 158 Cal.App.3d 1, upon which Hamilton relies, the doctrine of substantial compliance applies to the mechanic's lien laws. The issues for determination in any given case are whether the purpose of a particular statutory requirement was served, notwithstanding an error by the mechanic's lien claimant, and whether the error resulted in any prejudice. If the purpose of the statute was served and no one was prejudiced, a court may find the claimant substantially complied with the statute and not invalidate the lien due to the error. This analysis is not a question of strict or liberal interpretation of a statute, and therefore applies even if the absence of any ambiguity in the statute.

Although CIP failed to include in its preliminary notice all of the language required by section 3097, subdivision (c)(5), the portion it omitted was intended to benefit the mechanic's lien claimant, not the property owner, as demonstrated by the legislative history of the amendment adding that language. Nothing in the record indicates that a notice of completion or notice of cessation was filed in the course of construction of the condominium project, and no one contends CIP failed to timely file and record its lien. Thus, the omitted language was irrelevant in the circumstances of this

13

case. CIP actually complied with section 3097, subdivision (c)(5) as to all matters of substance by including in its preliminary notice all of the statutorily mandated language designed to protect the property owner from unknown claims and afford it an opportunity to protect itself. The included language informed Hamilton of the only consequences pertinent to its situation. The purpose of the preliminary notice statute (with respect to protecting the property owner) was achieved, and no one was prejudiced by CIP's omission of the final two sentences required by the statute. Permitting Hamilton to use the omitted language as a sword to defeat CIP's mechanic's lien would unjustly enrich Hamilton on the basis of an inconsequential error, and would be completely inconsistent with the purposes of both the mechanic's lien laws in general and the notice provision in particular. Accordingly, we conclude CIP substantially complied with the preliminary notice statute. The trial court did not err by reaching the same conclusion.

**2.      Sufficiency of the evidence:  Hamilton's status as a bona fide purchaser**

Hamilton further contends the trial court erred by failing to recognize that it was a bona fide purchaser that took title before CIP recorded its lis pendens. As Hamilton notes, it raised the issue in its trial brief.

**a.      The burden of providing an adequate record on appeal**

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The "party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) Failure to provide an adequate record on an issue requires that the issue be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

"Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule

14

is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

### b. The record does not demonstrate error

The issue of whether Hamilton was a bona fide purchaser and thus terminated CIP's mechanic's lien was squarely placed in issue at trial, as Hamilton admits. The trial court clearly decided this issue against Hamilton. Hamilton's contention that the trial court erred is thus a challenge to the sufficiency of the evidence. Because Hamilton failed to obtain a reporter's transcript of the trial, it cannot prevail on a sufficiency of evidence claim. We must presume that the evidence established Hamilton was not a bona fide purchaser. The trial court may have found that Hamilton had actual or imputed notice of CIP's lien. Notably, the second amended complaint alleged that "Defendants, and each of them were the agents and employees of each and every other co-Defendant, acting within the course and scope of said agency and employment with the full knowledge, consent and authority of the others." Such agency, if proved, would have provided imputed notice. (§ 2332; 5 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 11:76.) Alternatively, the court may have concluded that, because Hamilton took title through a deed in lieu of foreclosure, as Hamilton's trial brief admitted, there was a merger and elimination of the lien secured by the trust deed, leaving Hamilton's title subject to intervening junior liens, such as CIP's. (*Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 742; 4 Miller & Starr, Cal. Real Estate, *supra*, §§ 10:54–10:55.) Because Hamilton did not obtain a statement of decision, we do not know the trial court's specific reasons for concluding that Hamilton was not a bona fide purchaser, but we necessarily infer that it so found. Whatever the trial court's reasoning, the absence of a reporter's transcript of the trial, together with the requirement that Hamilton provide an appellate record demonstrating reversible error, prevents Hamilton from challenging the sufficiency of the evidence supporting the verdict against it.

**3.      The interveners' claims**

The interveners' appeals seek reversal of the judgment on the same grounds, with the Lee interveners arguing, in addition, that they are bona fide purchasers, i.e., lacking actual, constructive, and imputed notice of the lien, lis pendens, and judgment.  With respect to constructive notice, they may be correct, given CIP's failure to name Hamilton, the owner of record at the time, in its lis pendens.  However, this would not establish that the interveners lacked actual or imputed notice.  We will not address, let alone resolve, their claims to be bona fide purchasers as these claims include factual determinations that must be made by the trial court upon the basis of evidence, not by an appellate court on the basis of a conclusory claim in a brief or an allegation in an unadjudicated complaint in intervention.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.


16